SPOHN v VAN DYKE PUBLIC SCHOOLS

Docket No. 301196. Submitted March 13, 2012, at Detroit. Decided May 8,
        2012, at 9:05 a.m.

        Cindy Spohn brought an action in the Macomb Circuit Court against
        the Van Dyke Public Schools, Edie T. Burks, Mark Skrzynski, Donald
        Colpaert, and Kathleen Spaulding, alleging that she was subjected to
        sexual harrassment in violation of Michigan's Civil Rights Act, MCL
        37.201 *et seq*. Burks, Skrzynski, Spaulding, and the school district
        moved for summary disposition, asserting that Spohn was judicially
        estopped from pursuing her sexual harassment claim because she
        had failed to identify the claim as an asset in a Chapter 13 bankruptcy
        proceeding that she had previously filed, 11 USC 1301 *et seq*. Colpaert
        subsequently concurred with and joined the motion for summary
        disposition. The alleged incidents of sexual harassment occurred
        from September 2008 through the beginning of December 2008.
        Spohn and her husband filed the joint petition for Chapter 13
        bankruptcy on November 27, 2008, in the United States Bankruptcy
        Court for the Eastern District of Michigan. They filed their proposed
        bankruptcy plan on December 9, 2008. The plan did not refer to
        Spohn's potential claim for sexual harassment. January 6, 2009, was
        Spohn's final day of work with the school district. On that same day,
        Spohn's husband contacted an attorney to discuss whether Spohn
        had a claim against the school district. The bankruptcy court subse-
        quently confirmed Spohn's Chapter 13 plan. In May 2009, Spohn's
        attorney with regard to her sexual harassment claim sent a letter to
        the school district proposing a settlement of the claim. On August 26,
        2009, because of the failure of Spohn and her husband to make
        payments in accordance with their Chapter 13 plan, the Chapter 13
        Standing Trustee for the United States Bankruptcy Court for the
        Eastern District of Michigan, Tammy L. Terry, moved to dismiss the
        plan. Spohn and her husband initially filed a response to the trustee's
        motion, but withdrew it on September 28, 2009, the same day that
        Spohn filed her sexual harassment complaint in the circuit court. The
        bankruptcy court formally dismissed Spohn and her husband's
        Chapter 13 petition on March 11, 2010. The circuit court, Donald G.
        Miller, J., granted summary disposition in favor of defendants,
        concluding that Spohn was judicially estopped from bringing her
        sexual harassment claim because she had not disclosed it during the

bankruptcy proceeding. The circuit court also denied Spohn's motion for reconsideration. Spohn appealed.

The Court of Appeals *held*:

1. Judicial estoppel is an equitable doctrine that generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. Under the prior-success model of judicial estoppel, a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding; there must be some indication that the court in the earlier proceeding accepted that party's position as true, and the claims must be wholly inconsistent.

2. To support a finding of judicial estoppel in the context of bankruptcy proceedings, the reviewing court must find that (1) the plaintiff assumed a position that was contrary to the one asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition, and (3) the plaintiff's omission did not result from mistake or inadvertence. In determining whether the plaintiff's conduct resulted from mistake or inadvertence, the reviewing court considers whether (1) the plaintiff lacked knowledge of the factual basis of the undisclosed claims, (2) the plaintiff had a motive for concealment, and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, the reviewing court will look, in particular, at the plaintiff's attempts to advise the bankruptcy court of the omitted claim. By failing to disclose her sexual harassment claim, Spohn assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceeding. The bankruptcy court adopted the contrary position by confirming Spohn's Chapter 13 plan, which did not refer to her potential sexual harassment lawsuit. Spohn's omission did not result from mistake or inadvertence given that Spohn had knowledge of the factual basis of the undisclosed sexual harassment claim, yet she never attempted to advise the bankruptcy court of the existence of that claim, which indicated both concealment and bad faith. Moreover, Spohn received an unfair advantage over her creditors in the bankruptcy action by not disclosing the possible sexual harassment lawsuit.

Affirmed.

ESTOPPEL — JUDICIAL ESTOPPEL — BANKRUPTCY PROCEEDINGS.

To support a finding of judicial estoppel in the context of bankruptcy proceedings, the reviewing court must find that (1) the plaintiff

assumed a position that was contrary to the one asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition, and (3) the plaintiff's omission did not result from mistake or inadvertence; in determining whether the plaintiff's conduct resulted from mistake or inadvertence, the reviewing court considers whether (1) the plaintiff lacked knowledge of the factual basis of the undisclosed claims, (2) the plaintiff had a motive for concealment, and (3) the evidence indicates an absence of bad faith; in determining whether there was an absence of bad faith, the reviewing court will look, in particular, at the plaintiff's attempts to advise the bankruptcy court of the omitted claim.

*Ihrie O'Brien* (by *Harold A. Perakis*) for Cindy Spohn.

*Lusk & Albertson, PLC* (by *Kevin T. Sutton* and *Robert T. Schindler*), for the Van Dyke Public Schools, Edie T. Burks, Mark Skrzynski, and Kathleen Spaulding.

*Cardelli, Lanfear & Buikema, P.C.* (by *Lisa C. Walinske* and *Matthew Scarfone*), for Donald Colpaert.

Before: WHITBECK, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM. Plaintiff, Cindy Spohn, appeals as of right the trial court's grant of summary disposition based on judicial estoppel in favor of defendants, Van Dyke Public Schools (VDPS), Edie T. Burks, Mark Skrzynski, Donald Colpaert, and Kathleen Spaulding, on Spohn's claim of workplace sexual harassment. We affirm.

## I. FACTS

At the time of the events leading to her workplace sexual harassment claim, Spohn was employed as a

secretary with the Van Dyke Public Schools (VDPS). During the relevant time period, Edie T. Burks was the personnel director for VDPS, Kathleen Spaulding was the superintendent for VDPS, and Mark Skrzynski served as Spohn's direct supervisor at the Thompson Community Center. Donald Colpaert was a teacher at VDPS and is the individual that Spohn accused of engaging in various communications resulting in her sexual harassment claim.

For purposes of this appeal, the facts pertaining to Spohn's underlying claim of sexual harassment are not relevant and will not be addressed because the grant of summary disposition was premised, and is challenged, on the basis of the trial court's determination regarding the applicability of judicial estoppel and Spohn's earlier participation in a Chapter 13 bankruptcy proceeding. Although the parties dispute the significance of various events that occurred during Spohn's underlying lawsuit for sexual harassment and her Chapter 13 bankruptcy proceedings, as well as the trial court's reliance on those events in granting summary disposition, there is no disagreement regarding the actual timeline of the events that transpired.

The alleged incidents of harassment that comprise Spohn's complaint occurred from September 2008 through the beginning of December 2008. Spohn and her husband filed their joint petition for Chapter 13 bankruptcy on November 27, 2008. This was Spohn's fourth petition with the bankruptcy court. Spohn and her husband filed their proposed Chapter 13 bankruptcy plan on December 9, 2008. But the proposed plan did not refer to or mention Spohn's potential lawsuit for sexual harassment or hostile-environment sexual harassment against VDPS and the other defendants in this case.

Spohn's final day of work with VDPS was on January 6, 2009. On that same day, Spohn's husband contacted an attorney to discuss whether Spohn had a potential lawsuit against VDPS.

As part of the Chapter 13 bankruptcy proceedings, Spohn and her husband attended a meeting of creditors on January 14, 2009. While Spohn's husband testified that he had been laid off from work, neither Spohn nor her husband indicated that they were contemplating or pursuing civil litigation pertaining to Spohn's employment with VDPS. Although on January 23, 2009, the Chapter 13 Standing Trustee, Tammy Terry, filed objections to Spohn's bankruptcy plan and sought restrictions premised on the number of Spohn's prior bankruptcy filings, the bankruptcy court ultimately confirmed Spohn's Chapter 13 plan on February 25, 2009. In May 2009, Spohn's attorney wrote a letter to VDPS proposing a settlement of the sexual harassment claim.

Because of Spohn's failure to make payments in accordance with the Chapter 13 plan, the trustee moved to dismiss Spohn's Chapter 13 plan on August 26, 2009. On September 15, 2009, Spohn filed a response to the trustee's motion to dismiss. On September 28, 2009, Spohn initiated the underlying litigation in the Macomb Circuit Court by filing her complaint alleging violation of Michigan's Civil Rights Act (CRA).[1] On that same day, Spohn voluntarily withdrew her response to the trustee's motion to dismiss. The bankruptcy court formally dismissed Spohn's Chapter 13 petition on March 11, 2010. Spohn has acknowledged, under oath, that neither she nor her husband ever disclosed her potential cause of action for sexual harassment while the bankruptcy proceedings were pending.

___

[1] MCL 37.2101 *et seq.*

On August 16, 2010, defendants Van Dyke Public
Schools, Burks, Skrzynski, and Spaulding moved for
summary disposition of Spohn's CRA suit pursuant to
MCR 2.116(C)(10). Although Colpaert was not initially
included as a party to this motion, he did separately file
a responsive brief concurring and seeking to join with
the other defendants in pursuing summary disposition.
Defendants' only assertion was that Spohn was judi-
cially estopped from pursuing her sexual harassment
claim because of her failure to include this potential
lawsuit as an asset in the Chapter 13 bankruptcy
proceeding. Specifically, defendants argued that
Spohn's failure to list her civil lawsuit as an asset
established that she asserted a contrary position in the
circuit court from that assumed in the bankruptcy court
in violation of her duty as a bankruptcy debtor to
disclose all potential causes of action. According to
defendants, such an inconsistency in her pleadings was
sufficient to support judicial estoppel. In addition, de-
fendants argued, because the bankruptcy court
"adopted the contrary position either as a preliminary
matter or as part of a final disposition," as demon-
strated by that court's confirmation of Spohn's Chapter
13 plan, the criteria for judicial estoppel had been met,
necessitating dismissal of Spohn's sexual harassment
claim.

Spohn contested the propriety of dismissal based on
judicial estoppel, asserting that on the date of filing her
Chapter 13 plan, she had no reason to believe a viable
sexual harassment claim existed. In addition, Spohn
argued, based on her inability to pay in conformance
with the bankruptcy plan as of April 27, 2009, that it
was assumed that her petition would be dismissed,
obviating any need for amendment or disclosure. Spohn
contended that the bankruptcy trustee's motion for
dismissal was granted on October 1, 2009, and that any

delay in the final issuance of an order of dismissal was irrelevant. Finally, Spohn asserted that her failure to disclose the sexual harassment lawsuit in the bankruptcy proceedings did not result in an unfair advantage or any substantial detriment to defendants. Spohn averred that she had no reason or motive to conceal the sexual harassment lawsuit from the bankruptcy court given that it would not have resulted in any financial benefit because her debts were not being discharged in bankruptcy, rather she was on a schedule to pay 100 percent of her outstanding debts, the vast majority of which were secured.

During the hearing on defendants' motion for summary disposition, in response to argument by Spohn's counsel that the failure to disclose the potential lawsuit to the bankruptcy court constituted "mistake or inadvertence" based on the absence of a "motive for concealment," the trial court stated:

> She knew the ins and outs of bankruptcy. This was her fourth bankruptcy.

> \* \* \*

> So she certainly should know, or you would think anybody with normal knowledge would know that if it's a potential asset down the road it's got to be disclosed.

> \* \* \*

> Arguably, you are talking about no motive, maybe it would be nice to have the wild card sitting under the blotter somewhere so when all this calms down, okay, now you go ahead with the lawsuit. Would that be a possibility?

During further discourse with the trial court, Spohn's counsel acknowledged that Spohn did not disclose the potential lawsuit to her bankruptcy attorney and did

not amend her bankruptcy petition. Her counsel argued, however, that given Spohn's anticipation that the bankruptcy petition would be dismissed because of her failure to make payments in accordance with the stipulated plan, there was no reason for Spohn to either disclose the potential lawsuit or amend the petition.

In granting summary disposition to defendants, the trial court stated, in relevant part:

> Yeah, she doesn't have to know all the facts, or even the legal basis, to list it on her assets. And she knew about it way back in 2008, 2007 when the actual alleged acts actually occurred in 2007, 2008. So she knew that she possibly had a cause of action at that time.

> \* \* \*

> You know, you talk about she's got an obligation to disclose all those assets and potential assets to the bankruptcy court.

> \* \* \*

> And it's certainly contrary to her position here when she didn't disclose such. So I believe that judicial estoppel does apply here, and I'm going to grant the motion.

Spohn moved for reconsideration and to permit an evidentiary hearing in accordance with MCR 2.119(F)(3). Citing as error necessitating the trial court's reconsideration of its ruling, Spohn asserted that the trial court had erred by making a determination of fact that Spohn had benefited from her nondisclosure of the sexual harassment lawsuit to the bankruptcy court, which constituted mere "speculation." Spohn further contended that the trial court had erred by concluding that she would have benefited from that nondisclosure when the relevant bankruptcy laws that applied to her case did not involve a discharge of debts.

Spohn took issue with the trial court's implication that her previous participation in earlier bankruptcy proceedings made her knowledgeable regarding any duty to disclose the potential lawsuit in the bankruptcy court. Finally, Spohn alleged that the trial court erred by finding as a matter of fact that she was aware of her potential sexual harassment cause of action at the time she filed her bankruptcy petition in November 2008. Spohn requested that the trial court conduct an evidentiary hearing "with a bankruptcy expert" in order to assist the trial court "in making a decision that comports with Michigan law as well as bankruptcy law."

In denying Spohn's motion for reconsideration, the trial court indicated that it was "satisfied that the order is proper in all respects" and that Spohn was "attempting to revisit issues that have already been resolved." The trial court separately entered an order denying Spohn's motion for an evidentiary hearing. Spohn now appeals.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Although defendants moved for summary disposition pursuant to MCR 2.116(C)(10), Spohn asserts that the trial court's grant of summary disposition based on judicial estoppel was more properly premised on MCR 2.116(C)(7). This Court has recently discussed the standard of review for MCR 2.116(C)(7) and how it is distinguished from MCR 2.116(C)(10):

> Although courts should start with the pleadings when reviewing a motion brought under MCR 2.116(C)(7), courts must also consider any affidavits, depositions, admissions, or other documentary evidence that the parties submit to determine whether there is a genuine issue of material fact. "[T]he trial court [is] obligated to evaluate the specific

conduct alleged to determine whether a valid exception exists." If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred is an issue of law for the court. *But* if a question of fact exists so that factual development could provide a basis for recovery, caselaw states that dismissal without further factual development is inappropriate. And it is under this latter circumstance—where there are questions of fact necessary to resolve the ultimate issue . . .— that we believe the (C)(7) procedure diverges from the (C)(10) procedure.[2]

We need not determine whether the motion was brought under the correct subrule, because the Court will not reverse a trial court's order if it attained the correct result, albeit for the wrong reason.[3]

This Court reviews de novo a trial court's decision on a motion for summary disposition.[4] When reviewing equitable actions, this Court reviews the trial court's decision de novo.[5]

### B. JUDICIAL ESTOPPEL

Judicial estoppel is an equitable doctrine,[6] which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."[7]

This doctrine is "utilized in order to preserve 'the integrity

---

[2] *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010) (citations omitted).

[3] *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

[4] *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 424; 751 NW2d 8 (2008).

[5] *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994).

[6] *Opland v Kiesgan*, 234 Mich App 352, 365; 594 NW2d 505 (1999).

[7] *White v Wyndham Vacation Ownership, Inc*, 617 F3d 472, 476 (CA 6, 2010) (citation and quotation marks omitted).

of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.' " *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); see also *Eubanks[ v CBSK Fin Group, Inc,* 385 F3d 894, 897 (CA 6, 2004)] ("Judicial estoppel, however, should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.' ").[8]

Under the "prior success model" of judicial estoppel, "a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding."[9] In accordance with this model of judicial estoppel, "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent."[10] The prior success model, however, "does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits."[11]

More specifically, in the context of bankruptcy proceedings, the federal courts[12] have indicated that

to support a finding of judicial estoppel, [a reviewing court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the

---

[8] *Id.*

[9] *Paschke v Retool Indus,* 445 Mich 502, 509; 519 NW2d 441 (1994) (citations and quotation marks omitted).

[10] *Id.* at 510.

[11] *Reynolds v Internal Revenue Comm'r,* 861 F2d 469, 473 (CA 6, 1988).

[12] "Although the decisions of lower federal courts are not binding precedents, federal decisions . . . are often persuasive." *Adams v Adams (On Reconsideration),* 276 Mich App 704, 715-716; 742 NW2d 399 (2007) (citation omitted).

bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from mistake or inadvertence, [the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [the reviewing court] will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of [the plaintiff's] omitted claim.[13]

### 1. ASSUMPTION OF CONTRARY POSITION

As stated, to establish the first requirement for the imposition of judicial estoppel, it must be shown that the plaintiff "assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings[.]"[14] In this case, it is undisputed that Spohn did not include her potential sexual harassment lawsuit on her bankruptcy petition and did not amend that petition to list the possible cause of action while the bankruptcy remained pending. This failure to disclose the potential lawsuit was contrary to the bankruptcy code,[15] which requires a debtor to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs.[16] It is routinely recognized that a potential cause of action constitutes an asset that must be included under 11 USC 521(a)(1)(B)(i).[17] In delineating this obligation, the federal courts have stated:

---

[13] *White*, 617 F3d at 478.

[14] *Id.*

[15] 11 USC 101 *et seq*.

[16] 11 USC 521(a)(1)(B).

[17] See *Eubanks*, 385 F3d at 897.

The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed. *Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional.[18]

Further, " '[t]he duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action'."[19] The disclosure obligations of debtors are considered to be essential to the bankruptcy process:

The rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets*. The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete*.[20]

Because there is no dispute that Spohn failed to include the sexual harassment claim on her bankruptcy petition, or to amend that petition, the first requirement for the application of judicial estoppel was dem-

---

[18] *In re Coastal Plains, Inc*, 179 F3d 197, 208 (CA 5, 1999) (citations and quotation marks omitted).

[19] *Id.*, quoting *Youngblood Group v Lufkin Fed S&L Ass'n*, 932 F Supp 859, 867 (ED Tex, 1996).

[20] *Coastal Plains*, 179 F3d at 208, quoting *Rosenshein v Kleban*, 918 F Supp 98, 104 (SD NY, 1996) (alteration in original).

onstrated because Spohn assumed a position in the bankruptcy proceeding that was contrary to her position in the circuit court.

### 2. BANKRUPTCY COURT'S ADOPTION OF THE CONTRARY POSITION

To establish the second requirement for the imposition of judicial estoppel, it must be shown that "the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition[.]"[21] To establish "adoption," it must only be shown that the bankruptcy court confirmed Spohn's plan, which did not refer to Spohn's potential sexual harassment lawsuit.[22] Because it is undisputed that the bankruptcy court confirmed Spohn's Chapter 13 plan, the second requirement of "adoption" for judicial estoppel was established.

### 3. MISTAKE OR INADVERTENCE

To establish the third requirement for the imposition of judicial estoppel, it must be shown that the plaintiff's "omission did not result from mistake or inadvertence."[23] And to determine if a plaintiff's omission constituted "mistake or inadvertence," courts consider whether "(1) she lacked knowledge of the factual basis of the undisclosed claims; (2) she had a motive for concealment; and (3) the evidence indicates an absence of bad faith."[24]

### a. LACK OF KNOWLEDGE

As stated, when considering if a plaintiff's omission constituted mistake or inadvertence, courts first con-

---

[21] *White,* 617 F3d at 478.

[22] See *id.* at 479.

[23] *Id.* at 478.

[24] *Id.*

sider whether the plaintiff "lacked knowledge of the factual basis of the undisclosed claims[.]"[25] But here, Spohn cannot legitimately dispute that she was aware and had knowledge of the factual basis of the undisclosed claim.

Spohn's own allegations and admissions in the circuit court reveal that the events comprising the substance of her sexual harassment claim primarily occurred from September 2008 through early December 2008. Spohn's Chapter 13 bankruptcy petition was filed on November 28, 2008, with the actual Chapter 13 plan submitted on December 9, 2008. Spohn's final day of work with VDPS was on January 6, 2009. On this same date, Spohn and her husband discussed her potential sexual harassment lawsuit with an attorney. A "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed."[26] Spohn relinquished her employment with VDPS and spoke with an attorney regarding her sexual harassment claim at least one week before participating in a creditors meeting in the bankruptcy court and before the trustee filed objections to the plan. Spohn's awareness of her potential claim occurred more than one month before her Chapter 13 plan was ultimately confirmed by the bankruptcy court on February 25, 2009. Given the continuing nature of her disclosure obligation, Spohn cannot successfully contend that she was unaware of her potential claim.

[25] *Id.*

[26] *Coastal Plains*, 179 F3d at 208 (citation and quotation marks omitted).

b. CONCEALMENT

When considering if a plaintiff's omission constituted mistake or inadvertence, courts next consider whether the plaintiff "had a motive for concealment[.]"[27] And in accordance with caselaw, a presumption regarding a motive to conceal exists because "[i]t is always in a Chapter 13 petitioner's interest to minimize income and assets" in order to secure payment directly rather than to the debtor's estate.[28] A debtor loses all rights to his or her property upon filing for bankruptcy.[29] As a result, "the right to pursue causes of action formerly belonging to the debtor . . . vests in the trustee for the benefit of the estate. The debtor has no standing to pursue such causes of action."[30] Spohn's failure to initially disclose her possible lawsuit or to later amend her bankruptcy petition, despite opportunity, suggests a motive for concealment.

Nevertheless, Spohn argues that she lacked a motive to conceal because she was not seeking a discharge in the bankruptcy court as her plan provided for 100 percent payment to her creditors. In support, Spohn submits an affidavit from her bankruptcy attorney. While the affidavit confirms Spohn's assertion that she was involved in a payment plan that would require 100 percent payment of all debts and not a discharge, it does not address the failure to disclose the potential lawsuit. There is no evidence to suggest that Spohn disclosed the existence of the potential lawsuit to her bankruptcy attorney, which further serves to suggest Spohn had a motive to conceal. Spohn's assertion that her plan would not have differed

---

[27] *White*, 617 F3d at 478.

[28] *Id.* at 479 (citation and quotation marks omitted).

[29] See 11 USC 541(a).

[30] *Bauer v Commerce Union Bank*, 859 F2d 438, 441 (CA 6, 1988) (citation and quotation marks omitted).

regardless whether she disclosed her potential lawsuit is unavailing and evidences a misconception or misunderstanding of the applicable law. When viewed within the context of a motive to conceal, the issue is not whether the plan would ultimately have been any different but, rather, whether there is sufficient evidence to demonstrate that Spohn was trying to retain assets that rightfully belonged to the estate and that should have been within the control of the trustee.

In addition, Spohn alleges that because of her inability to maintain the scheduled payment plan, she presumed that her bankruptcy petition would be dismissed and, thus, any need for amendment of the petition was effectively rendered moot. We again find this argument unavailing. Although the bankruptcy petition was dismissed because of a failure to comply with the payment schedule, it cannot be determined whether the existence of the possible civil lawsuit would have altered the bankruptcy court's decision in this regard. Had the lawsuit been disclosed, the trustee could have elected to pursue the claim, on Spohn's behalf, with any recovery available to the estate for payment of creditors. The existence of the possible lawsuit might have resulted in an amendment of the Chapter 13 plan rather than its complete dismissal. Moreover, Spohn's contention that her failure to disclose the asset was simply her belief that anticipated dismissal of the petition rendered the necessity for disclosure moot, is more properly considered within the context of whether "the evidence indicates an absence of bad faith,"[31] rather than motive for concealment.

### c. BAD FAITH

When considering whether "the evidence indicates an absence of bad faith," courts will look, in particular,

---

[31] *White*, 617 F3d at 478.

at the plaintiff's "attempts" to advise the bankruptcy court of the omitted claim.[32] More specifically, courts primarily examine a plaintiff's efforts to correct the bankruptcy schedules and to make the bankruptcy court aware of any initially undisclosed claims.[33] "Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important."[34] In this case, there is no dispute that Spohn did not inform the bankruptcy court of the potential sexual harassment lawsuit or make any attempts to amend her bankruptcy petition. This supports that Spohn was acting in bad faith.

And Spohn's contention that her filing of the sexual harassment lawsuit before formal dismissal of the bankruptcy petition evidences her lack of bad faith is unavailing. On August 26, 2009, the bankruptcy trustee filed its motion to dismiss Spohn's Chapter 13 plan. Spohn then filed this litigation on September 28, 2009. On that same day, Spohn voluntarily withdrew her response to the bankruptcy trustee's motion to dismiss. Although Spohn's bankruptcy petition was not formally dismissed until March 11, 2010, her failure to disclose the sexual harassment lawsuit after the trustee had submitted a motion to dismiss further suggests Spohn's bad faith.

Similarly, Spohn's assertion that her failure to disclose the potential lawsuit was merely mistake or inadvertence because she was unaware of her duty to disclose cannot be supported. "[I]f [courts] were to equate lack of legal training regarding a statutory duty to disclose or absence of affirmative efforts to conceal the claim with excusable mistake or inadvertence, it

---

[32] *Id.*

[33] *Id.* at 480.

[34] *Id.*

would undermine the familiar maxim that, even for *pro se* litigants, ignorance of the law is no excuse."[35] In addition:

> The Debtor signed her bankruptcy petition under penalty of perjury. By doing so, she certified that she had no claims against the Defendants. It was the Debtor's responsibility to verify the accuracy of the information contained in her schedules and statement of financial affairs and she "had the duty to carefully consider all of the questions posed and to see that they [were] completely and correctly answered."[36]

Thus, alleged lack of knowledge of the duty to disclose is not a defense to failing to fulfill that duty.

### 4. UNFAIR DISADVANTAGE OR DETRIMENT

Spohn contends there is an additional factor to be considered in the application of judicial estoppel. Citing *New Hampshire v Maine*,[37] Spohn points to the consideration in that case of a factor involving the existence of an "unfair advantage" or "unfair detriment." The Court in *New Hampshire* delineated the factors for application of judicial estoppel as follows:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the

---

[35] *Riddle v Chase Home Fin*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued September 2, 2012 (Docket No. 09-11182), 2010 WL 3504020 at *6.

[36] *In re Johnson*, 345 BR 816, 825 (WD Mich, 2006) (citation omitted) (alteration in original).

[37] *New Hampshire v Maine*, 532 US 742; 121 S Ct 1808; 149 L Ed 2d 968 (2001).

second court was misled. . . . *A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.*

In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts.[38]

But this additional factor is not determinative here. The purpose of the doctrine of judicial estoppel, especially in the context of bankruptcy proceedings, is to protect the judicial process, not the parties.[39]

The doctrine of judicial estoppel is driven by the important motive of promoting truthfulness and fair dealing in court proceedings. Judicial estoppel differs from such other forms of estoppel as promissory estoppel and equitable estoppel in that judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole, rather than solely on the relationship between the parties. Of utmost importance in determining whether to apply the doctrine of judicial estoppel is whether the party seeking to assert an inconsistent position would derive an unfair advantage * * * if not estopped.[40]

Again, as stated, the disclosure obligations of debtors are considered to be essential to the bankruptcy process because the

rationale for . . . decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system*

---

[38] *Id.* at 750-751 (emphasis added) (citations and quotation marks omitted).

[39] *Id.* at 749-750.

[40] *Gaumond v Trinity Repertory Co*, 909 A2d 512, 519 (RI, 2006), citing *New Hampshire*, 532 US at 751 (citations and quotation marks omitted).

*depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding. *The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by the debtor is incomplete.*[41]

Spohn received an unfair advantage over her creditors in the bankruptcy action by not disclosing the possible sexual harassment lawsuit.

### 5. CONCLUSION

In sum, we conclude that (1) by failing to disclose her sexual harassment claim, Spohn assumed a position that was contrary to the one that she had asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position by confirming Spohn's Chapter 13 plan, which did not refer to her potential sexual harassment lawsuit; and (3) Spohn's omission did not result from mistake or inadvertence. On this latter point, Spohn had knowledge of the factual basis of the undisclosed sexual harassment claim, yet she never attempted to advise the bankruptcy court of the existence of that claim, which indicates both concealment and bad faith. Moreover, Spohn received an unfair advantage over her creditors in the bankruptcy action by not disclosing the possible sexual harassment lawsuit. Accordingly, we hold that the trial court did not err by concluding that judicial estoppel barred Spohn's claim.

---

[41] *Coastal Plains*, 179 F3d at 208 (citation and quotation marks omitted).

### C. ALLEGEDLY IMPROPER FACT-FINDING

Spohn contends that the trial court engaged in improper fact-finding when it implied that Spohn had a motive to conceal her sexual harassment claims from the bankruptcy court and that the court's finding in that regard was speculative. Spohn further argues that the trial court ignored affidavits submitted contesting the grant of summary disposition, despite the failure of defendants to submit any evidence or documentation contradicting the content of the affidavits.

Spohn is correct in her assertion that a trial court is precluded from making findings of fact or resolving issues of credibility when deciding a summary disposition motion.[42] Spohn refers to the trial court's comments indicating that she had a motive to conceal her lawsuit from the bankruptcy court and implying her bad faith. Specifically, the colloquy in the trial court on the motion for summary disposition included the following comments in response to Spohn's counsel's argument that Spohn had no motive to conceal:

> *The Court*: She knew the ins and outs of bankruptcy. This was her fourth bankruptcy.
>
> [*Plaintiff's Counsel*]: Yes, it was.
>
> *The Court*: So she certainly should know, or you would think anybody with normal knowledge would know that if it's a potential asset down the road it's got to be disclosed.
>
> [*Plaintiff's Counsel*]: Well, I don't, there is no evidence that she knew she had a potential asset.
>
> When she, when she came to the conclusion the only time that she [sic], this court could look to that she conceivably came to a conclusion that she had the requisite facts to draw that conclusion, was when her attorney wrote a letter in May of 2009.

---

[42] *Jackhill Oil Co v Powell Prod, Inc*, 210 Mich App 114, 117; 532 NW2d 866 (1995).

But in May of 2009 the Chapter 13 in her mind was already on its way to being dismissed.

Plus the Browning case indicates that there has to be some showing of a benefit to her or a detriment to the plaintiff [sic] in this matter.

*The Court*: Potential benefit.

[*Plaintiff's Counsel*]: What potential benefit is there to her in this case[?]

*The Court*: Well, she has, let's say she has a wild card sitting under the blotter here. Maybe when all this goes, you know—

I'm just speculating now.

[*Plaintiff's Counsel*]: I understand.

*The Court*: —sort of a—

Arguably, you are talking about no motive, maybe it would be nice to have the wild card sitting under the blotter somewhere so when all this calms down, okay, now you go ahead with the lawsuit. Would that be a possibility?

[*Plaintiff's Counsel*]: I suppose if she had [sic], was a person who was lying in wait, but that is not what happened in this case. There was no lying in wait.

She didn't create—

She didn't send a letter out, her attorney didn't send out a letter in May 2009 after everything was resolved. I supposed [sic], to your point, had she waited until everything was resolved and then done that, conceivably, but she didn't. In fact, the fact that she didn't—

*The Court*: She didn't disclose it to her attorney.

In this case, the trial court's statements and inquiries merely consisted of a means to question and challenge Spohn's counsel's argument based, in part, on the facts before the trial court regarding Spohn's familiarity with bankruptcy proceedings and her duty or obligation to disclose the lawsuit as a possible asset. And even in the one instance that the trial court suggests that Spohn could

have received a "potential benefit" from the failure to disclose, the trial court acknowledged it was engaged in speculation and not fact-finding.

Further, in granting summary disposition, the trial court explained its ruling, stating:

> Yeah, she doesn't have to know all the facts, or even the legal basis, to list it on her assets. And she knew about it way back in 2008, 2007 when the actual alleged acts actually occurred in 2007, 2008. So she knew that she possibly had a cause of action at that time.
>
>         \*   \*   \*
>
> You know, you talk about she's got an obligation to disclose all those assets and potential assets to the bankruptcy court.
>
>         \*   \*   \*
>
> And it's certainly contrary to her position here when she didn't disclose such. So I believe that judicial estoppel does apply here, and I'm going to grant the motion.

The trial court's ruling was not premised on its speculation or finding of fact regarding Spohn's motive to conceal or bad faith. Rather, when viewed in context, the trial court's ruling was a legal determination that Spohn's failure to disclose her potential claims in the bankruptcy court was consistent with the applicability of judicial estoppel. Therefore, the trial court did not violate the bar against fact-finding and credibility determinations by a trial court when ruling on summary disposition.

We affirm.

WHITBECK, P.J., and JANSEN and K. F. KELLY, JJ., concurred.