*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHANNEL VIEW EAST CONDOMINIUM
ASSOCIATION, INC.,

UNPUBLISHED
February 25, 2021

Plaintiff-Appellee,

v

No. 351888
Chippewa Circuit Court
LC No. 16-014487-CK

GREGORY V. FERGUSON,

Defendant-Appellant.

Before: BECKERING, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Defendant, Gregory V. Ferguson, appeals by right a circuit court order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) to plaintiff, Channel View East Condominium Association, Inc., on its claims to foreclose on defendant's unit. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Channel View's 13 condominium "units" are plots of land, and the owner of each unit was responsible for constructing a single-family home. In 2001, plaintiff conveyed a condominium unit to defendant and his father[1] and they began constructing a house on the lot no later than 2003.

In September 2005, plaintiff informed defendant and his father that they had violated the condominium bylaws by not completing construction within 12 months and that a hearing would be held on September 30, 2005, that could result in a fine of $1,000 a month. The hearing was rescheduled at defendant's request, but neither he nor his father attended the rescheduled hearing. Plaintiff's board of directors imposed an escalating fine schedule: $100 a month from November

---

[1] Defendant's brother was also initially a joint owner but later transferred his interest to defendant.

-1-

2005 to January 2006, $500 a month from February 2006 to April 2006, and $1,000 a month after March 2006. Plaintiff informed defendant and his father of the fine schedule via letter.

It is plaintiff's position that under its bylaws fines against co-owners can be treated as condominium assessments, and any unpaid assessments constitute a lien on the unit. Thus, after defendant and his father failed to pay any of the fines or complete construction of the home, in May 2010 plaintiff filed a lien against defendant's property for nonpayment of assessments. An amended lien was filed in 2017, for $137,800 in unpaid assessments. It is undisputed that this amount is comprised solely of the unpaid fines.

Defendant's father died in November 2015, leaving defendant as the sole owner of the unit. In October 2016, plaintiff initiated a lawsuit seeking judicial foreclosure on defendant's unit to satisfy the lien. In an amended complaint, plaintiff added a claim to collect unpaid assessments, seeking a money judgment against defendant that could be collected through other means, such as through garnishment, if the foreclosure sale was insufficient to satisfy the lien. Plaintiff also brought claims for an injunction and account stated.

After discovery concluded, plaintiff moved for summary disposition under MCR 2.116(C)(10). Plaintiff argued that there was no genuine issue of material fact regarding whether defendant violated plaintiff's bylaws by failing to complete his structure within 12 months. Plaintiff also argued that it clearly had authority under the bylaws to levy fines against defendant for the violation after he failed to appear for the scheduled hearing. And according to plaintiff, it properly "assessed" the fines against defendant's unit and could procced with foreclosure on the lien securing the unpaid assessments.

Defendant moved for summary disposition under MCR 2.116(C)(5) (lack of capacity to sue). Defendant presented a purely legal argument: plaintiff had no capacity to sue because the lawsuit was not authorized by a valid board of directors. It was undisputed that plaintiff failed to hold annual meetings at which a new board of directors would have been elected. The trial court granted defendant summary disposition, ruling that plaintiff lacked capacity to sue because, by failing to hold annual elections, its board did not have valid directors and was powerless to initiate a lawsuit. This Court reversed the trial court's grant of summary disposition and remanded the case to the trial court for further proceedings. *Channel View East Condo Ass'n, Inc, v Ferguson (Channel View I)*, unpublished per curiam opinion of the Court of Appeals, issued July 2, 2019 (Docket No. 344149).

On remand, plaintiff renoticed the hearing on its motion for summary disposition under MCR 2.116(C)(10). Defendant, through new counsel, moved to amend his affirmative defenses to include waiver, laches and the first-substantial-breach rule.

At the motion hearing, defendant argued that there were questions of fact precluding summary disposition and also presented potentially dispositive legal arguments. There was some discussion of whether defendant was precluded from arguing that there were questions of fact given his prior counsel's statements at the first motion hearing that there were no disputed factual questions. Defendant argued that this statement was made in the context of the legal argument before the court at that time, but in any event, judicial estoppel did not apply because he did not gain an advantage from that statement. The trial court did not explicitly decide whether judicial

estoppel applied and the parties proceeded to present arguments on (1) whether there was a question of fact that defendant had violated the bylaws; (2) whether plaintiff had authority to levy fines; (3) whether the fines levied against defendant were reasonable; and (4) whether plaintiff could seek foreclosure on the basis of unpaid fines.

The trial court ruled that there were no material questions of fact, reasoning that defendant had time to cure his violation but had not done so. The court entered an order granting defendant summary disposition of the counts seeking foreclosure and a money judgment.[2] The court ruled that plaintiff had validly levied fines against defendant as a result of his default on the master deed and had validly assessed fines under article V, § 8 of the bylaws. The court also ruled that plaintiff was entitled to foreclosure and to recover unpaid fines of $1,000 a month from October 24, 2006 to January 11, 2018, for a total amount of $135,000. The trial court denied defendant's motion to add affirmative defenses on the basis that the motion was "moot for the reasons stated on the record."

## II. ANALYSIS

### A. VIOLATION OF BYLAWS

Defendant first argues that there is a material question of fact whether he violated the condominium bylaws.[3] We disagree, and given that conclusion, it is not necessary that we address the parties' arguments regarding judicial estoppel. Nonetheless, we will briefly address that issue.

"Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citations omitted). "Judicial estoppel is an extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Oplan v Kiesgan*, 234 Mich App 352, 363-364; 594 NW2d 505 (1999) (quotation marks and citations omitted). "Of utmost importance in determining whether to apply the doctrine of judicial estoppel is whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped." *Spohn*, 296 Mich App at 479 (quotation and ellipsis omitted).

First, it is not clear that the trial court applied the doctrine of judicial estoppel. While the court made some preliminary remarks as to what was agreed on at the first motion hearing, the parties proceeded to make arguments on both questions of law and fact, and the court concluded

---

[2] Plaintiff voluntarily dismissed the counts seeking an injunction and a claim for account stated, subject to reinstatement if summary disposition as to one of the other counts was reversed.

[3] We review de novo a trial court's decision on a motion for summary disposition. *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012). A party is entitled to summary disposition if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." MCR 2.116(C)(10). A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

-3-

that there were no material questions of fact. In doing so, the court did not invoke the doctrine of judicial estoppel. Second, defendant's counsel's statement at the first motion hearing that there were no disputed questions of facts must be viewed in the context of the argument he was making, which was that plaintiff lacked the legal capacity to sue, i.e., a question of law. See *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 492; 776 NW2d 387 (2009). Indeed, *plaintiff's* counsel seemed to recognize that defendant's counsel's statement was limited to the legal argument he was making. After defendant's counsel stated, "I think plaintiff's counsel and defense are in agreement on one thing, there are no disputed questions of fact," plaintiff's counsel clarified, "For the purpose of this motion I don't think anything is in dispute factually." Third, we fail to see how defendant gained an unfair advantage from his prior counsel's statement. The trial court granted defendant summary disposition under MCR 2.116(C)(5) because it agreed with his argument that plaintiff did not have legal capacity to sue, which we then overturned. Defendant could have just as easily gained this short-lived advantage in the trial court by arguing that, while there were facts in dispute, not one related to the question of whether plaintiff had a valid board of directors. In sum, we do not view defendant's argument on remand as contradicting his assertions relating to his prior motion under MCR 2.116(C)(5), and estoppel is not necessary to prevent him from gaining an unfair advantage.

Setting that aside, we will now address whether there is a material question of fact whether defendant violated plaintiff's bylaws. Under the Condominium Act, MCL 559.101 *et seq.*, the condominium bylaws govern the administration of a condominium project. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015), citing MCL 559.153. "Bylaws are attached to the master deed and, along with the other condominium documents, the bylaws dictate the rights and obligations of a co-owner in the condominium." *Id.*, citing MCL 559.103(9) and (10); MCL 559.108. We interpret condominium bylaws according to the rules of contractual interpretation. *Id*.

Defendant was fined for violating article VIII, § 6, of plaintiff's bylaws, which provides in relevant part:

> When the construction of any building is once begun, work thereon must be diligently continued and must be completed within a reasonable time. In any event, all construction must be completed within twelve (12) months from the start thereof, provided that the Developer may extend such time when in Developer's opinion conditions warrant an extension.

In discovery, defendant admitted that construction of his unit was not completed within twelve months from the start thereof. On remand, defendant filed an affidavit stating that he was granted "at least one extension of time to complete the house." However, no additional information regarding the purported extension is provided. The record appears consistent with defendant and his father receiving an extension at one point. Construction began in 2003, and it was not until September 2005 that plaintiff informed defendant that he had violated the condominium bylaws by not completing construction within 12 months. But an extension would have merely set forth a different timeline for completion. In the absence of any showing that an extension applied to the period for which defendant was fined, his vague assertion of an extension does not create a material factual dispute whether construction was timely completed. See MCR 2.116(G)(4) ("When a motion under subrule (C)(10) is made and supported as provided in this

-4-

rule, an adverse party . . . must . . . set forth specific facts showing that there is a genuine issue for trial.").

Defendant also argues that there is a distinction between "work" and "construction" in the bylaws, and while construction had to be completed within 12 months, work only had to be completed within a reasonable time. Defendant argues that when he admitted in discovery on January 11, 2018, that "[c]onstruction has not ceased, interior work continues" the exterior structure of the home had been completed at some previous unspecified date. We disagree with defendant's interpretation of the bylaws because article VIII, § 6, provides that *all* construction must be completed within 12 months. Moreover, even if we accept defendant's argument that the bylaws are ambiguous, and therefore presents a question of fact,[4] he fails to provide evidence that (1) the exterior construction was timely completed (either within 12 months or any extension) and (2) all other work was completed in a reasonable time. Defendant has not offered any specific facts regarding the timeline of the home's construction that would allow a reasonable fact-finder to conclude that he did not violate plaintiff's bylaws. Accordingly, he failed to carry his burden of demonstrating that disputed factual questions exist on this issue. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

## B. AUTHORITY TO LEVY FINES

Defendant also argues that plaintiff did not have authority to levy fines because it failed to promulgate rules or regulations providing a fines procedure. Again, we disagree.[5]

The Condominium Act provides associations various relief in the event of a default by a co-owner, including the levying of fines. MCL 559.206(c). Consistent with this statutory provision, plaintiff's bylaws entitled it to "[s]uch other reasonable remedies as provides in the rules and regulations promulgated by the Board of Directors, including without limitation, the levying of fines against members after notice and opportunity for hearing, as provided in the Association rules and regulations . . . ." Art XIV, § 1(c).

It is thus clear that plaintiff has authority under the Condominium Act and its bylaws to levy fines for violation of the condominium documents, and as discussed, there is no material question of fact that defendant violated the bylaws. Defendant argues, that even if so, plaintiff did not have authority to impose a fine because the board of directors never promulgated rules and regulations. However, while the bylaws contemplate that the board would create rules and regulations, defendant does not identify any provisions requiring it to do so.[6] Nor does defendant

---

[4] "Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 220; 933 NW2d 363 (2019).

[5] We review de novo issues of statutory and contractual interpretation. *Tuscany Grove Ass'n*, 311 Mich App at 393.

[6] To the extent that the bylaws could be read as requiring the creation of rules and regulations, "defendant or another co-owner could have initiated a proceeding to require plaintiff to comply with the bylaws, MCL 559.207 . . . ." *Channel View I*, unpub op at 7.

provide any authority supporting its position that a failure to promulgate governing rules and regulations divests the board of its authority to impose fines. This issue is somewhat similar to the prior appeal in this case, in which we held that "plaintiff's failure to hold annual meetings," as required by the bylaws, "did not automatically divest its board of directors of power." *Channel View I*, unpub op at 7. Further, defendant was provided with notice and a hearing—which was rescheduled at his request and for which he did not appear—and informed of the escalating fine schedule. And defendant does not explain how he was prejudiced by the lack of rules and regulations.

In sum, plaintiff had authority under the Condominium Act and its bylaws to levy fines for violation of the condominium documents. Its failure to promulgate rules and regulations regarding fines did not divest it of that authority.

## C. REASONABLENESS OF THE FINES

Defendant next argues that there is a question of fact whether the fees imposed by plaintiff were reasonable. We agree.

The parties agree that any fine issued by plaintiff must be reasonable given that the Condominium Act and bylaws only authorize "reasonable remedies." MCL 559.206(c); art XIV, § 1(c). However, plaintiff maintains that the reasonableness of the fines imposed against defendant is a question of law for the trial court to decide in its discretion, while defendant contends that it is a question of fact.

Generally, "[r]easonableness is a question of fact." *Dunn v Lederle Laboratories*, 121 Mich App 73, 80; 328 NW2d 576 (1982) (holding that the adequacy of a manufacture's warning is an issue of reasonableness to be decided by the jury). There is no shortage of cases holding that questions of reasonableness should be determined by the finder of fact. See e.g., *Rasheed v Chrysler Corp*, 445 Mich 109, 129; 517 NW2d 19 (1994) ("[T]he question of reasonableness [of the employee's rejection of reinstatement offer] is one of fact that must take into account the particular circumstances of each case."); *Bak v Citizens Ins Co of America*, 199 Mich App 730, 739; 503 NW2d 94 (1993) ("Reasonableness of mitigation [of damages] is a question of fact."). Defendant relies on *Highland Park Ass'n v Boseker*, 169 Mich 4, 9; 135 NW 106 (1912), which held that "the validity of by-laws and regulations relating to the management of the property, affairs, and business of the association depends upon the fact of their being reasonable, and their reasonableness depends upon particular circumstances or matters in pais,[7] and is therefore a question for the jury." It follows that the reasonableness of a fine levied for violation of the bylaws should also be determined as a question of fact. Moreover, the reasonableness of the fines does not involve the interpretation or application of legal principles but instead turns on the circumstances of defendant's violation.

Plaintiff did not move for summary disposition on the question of whether the fines were reasonable, and so it did not carry its initial burden of identifying this an issue to which it was entitled summary disposition to under MCR 2.116(C)(10). See *Quinto*, 451 Mich at 362. Nor has

---

[7] A matter in pais is a "[m]atter of fact." *Black's Law Dictionary* (11th ed).

plaintiff explained why a $1,000 monthly fine or the cumulative amount of fines is reasonable under the circumstances of this case. Further, defendant argued in his filed response to plaintiff's motion that the fines were unreasonable and therefore this issue was not previously conceded.

However, defendant waived any right he had to a jury trial on this issue by failing to file a timely jury demand. MCR 2.508(D)(1). Accordingly, the reasonableness of the fines imposed against defendant shall be determined by the trial court as trier of fact. While this may seem duplicative to the trial court's prior ruling, the court did not make any express findings as to the reasonableness of the fines either at the motion hearing or in the order granting summary disposition. To the extent that the trial court impliedly determined this issue as a matter of law, we remand for the court to determine the reasonableness of the fines as a question of fact after holding an evidentiary hearing.

## D. AUTHORITY TO FORECLOSE

Defendant also argues that plaintiff does not have authority to foreclose on his property solely on the basis of unpaid fines. We agree.[8]

This issue turns on the distinction between assessments and fines. This distinction is important because the bylaws (which mirrors the Condominium Act) only grant plaintiff the authority to foreclose assessments liens:

> (a) Failure to comply with any of the terms or conditions of the Condominium Documents shall be grounds for relief, which may include, without limitation, an action to recover sums due to damages (including actual attorney's fees), for injunctive relief, *for foreclosure of lien (if in default in payment of assessment)* . . . . [Art XIV, § 1 (emphasis added). See also MCL 559.206(a).]

That liens and foreclosure are limited to unpaid assessments is also made clear by article IV, § 2(b), which provides that plaintiff has the authority "[t]o levy and collect assessments against and from the members of [plaintiff] and to use the proceeds therefrom for the purposes of [plaintiff] and to enforce assessments through liens and foreclosure proceedings where appropriate[.]" Under the bylaws, unpaid fines do not become liens and, even if they did, the bylaws do not grant plaintiff authority to foreclose liens that consist only of fines.

The Condominium Act also refers to assessments and fines as distinctive terms. See MCL 559.206. "When the Legislature uses different words, the words are generally intended to connote different meanings." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n*, 484 Mich 1, 14; 795 NW2d 101 (2002). And courts "should avoid, when reasonably possible, the adoption of essentially synonymous definitions of distinctive terms without the most careful consideration of how those terms will come to be understood within a statutory scheme." *Honigman Miller Schwartz and Cohn LLP v Detroit*, 505 Mich 284, 318; 952 NW2d 358 (2020). As plaintiff acknowledges, assessments and fines serve different purposes. Condominium units

---

[8] We review de novo issues of statutory and contractual interpretation. *Tuscany Grove Ass'n*, 311 Mich App at 393.

are assessed amounts to cover maintenance, repair, management and other common expenses incurred by the association. See MCL 559.169. In contrast, the purpose of fines is to punish co-owners for violation of the condominium documents. See *Elbadramany v Oceans Seven Condominium Ass'n Inc*, 461 So 2d 1001, 1002-1003 (Fla App, 1984) (holding that foreclosure of a lien consisting of an unpaid fine was invalid under state law because the fine was not a common expense; rather the "purpose of the fine was to punish [the member] or to induce him to curb his perceived errant ways[.]").[9]

Nonetheless, plaintiff maintains that fines may be treated as assessments under its bylaws. Plaintiff does not contend that the fines should be treated as "regular annual assessments" or "special assessments" as defined by its bylaws. Instead, plaintiff relies on article V, § 8, which explains that the maintenance and repair of common elements are charged to co-owners as common expenses and that each member will be responsible for costs or damages caused by their negligence. § 8 concludes: "Any costs or damages to the Association that are herein or elsewhere in the Condominium Documents assigned to the individual member may be assessed to and collected from the responsible member in the manner provided for regular assessments."

We agree with plaintiff that under this provision that if an individual member or co-owner causes costs or damages, plaintiff may collect that amount as an assessment. However, plaintiff does not identify any costs or damages that it incurred because of defendant's failure to timely complete construction. Rather, plaintiff relies on dictionary definitions in an attempt to establish that fines, in the abstract, equate to costs and damages. But the imposition of fines does not in and of itself establish that plaintiff incurred costs or damages. As discussed, fines for violation of the bylaws are meant to punish defendant, the co-owner, rather than compensate plaintiff for expenses it incurred. While it is possible that a violation of the condominium documents may also result in costs and damages to the association, there has been no such showing in this case. Accordingly, we agree with defendant that the fines levied against him may not be treated as assessments and therefore plaintiff did not have authority under its bylaws to file a lien against defendant and seek foreclosure.

In its appellate brief, plaintiff alternatively argues that even if fines may not be treated as assessments, it can nonetheless proceed with foreclosure under MCL 559.208. "MCL 559.208 governs foreclosure of condominium assessment liens . . . ." *Trademark Props of Mich, LLC v Federal Nat'l Mortg Ass'n*, 308 Mich App 132, 143; 863 NW2d 344 (2014).

For context, it is helpful to begin with MCL 559.208 as it was enacted. See *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 498; 813 NW2d 763 (2011) ("The changes in an act must be construed in light of the act's predecessor statutes and the law's historical development."). MCL 559.208 originally provided in relevant part: "Sums assessed to a co-owner by the association of co-owners which are unpaid constitutes a lien upon the unit . . . . The lien may be foreclosed by an action or by advertisement by the association." MCL 559.208(1), as enacted by 1978 PA 59. In other words, MCL 559.208 provided that unpaid assessments

---

[9] "Although not binding, authority from other jurisdictions may be considered for its persuasive value." *Estate of Voutsara by Gaydos v Bender*, 326 Mich App 667, 676; 9292 NW2d 809 (2019).

become a lien for which associations could seek foreclosure. In 2000, the statute was amended to include the following emphasized language:

> Sums assessed to a co-owner by the association of co-owners that are unpaid *together with interest on such sums, collection and late charges, advances made by the association of co-owners for taxes or other liens to protect its lien, attorney fees, and fines in accordance with the condominium documents*, constitute a lien upon the unit. . . . The lien may be foreclosed by an action or by advertisement by the association of co-owners in the name of the condominium project on behalf of the other co-owners. [MCL 559.208(1), as amended by 2000 PA 379 (emphasis added).[10]]

Plaintiff argues that that the inclusion of "fines" in MCL 559.208(1) means that unpaid fines become a lien against a unit and that it can seek foreclosure of such a lien. We disagree. MCL 559.208(1) does not provide that fines and the other added categories become liens unto themselves, separate and distinct from assessment liens. The phrase "together with" means "in addition to" and "in association with." Merriam-Webster Online Dictionary.[11] MCL 559.208(1). Thus, it is still case under the Condominium Act that liens arise solely from assessments, but such liens now secure additional amounts. The apparent legislative intent was to allow associations to recover other outstanding amounts owed by the co-owner when they sought foreclosure for unpaid assessments. Further, plaintiff's interpretation of MCL 559.208 to allow foreclosure solely to recover fines cannot be square with MCL 559.206(a), which again provides that associations may seek "foreclosure of lien *if default in payment of assessment . . . .*" (Emphasis added). "We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature." *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627 NW2d 247 (2001). For these reasons, we conclude that MCL 559.208 does not authorize foreclosure in this case.

## E. PLEADING AMENDMENT

Finally, defendant argues that the trial court erred by refusing to consider his motion to amend his affirmative defenses before it granted plaintiff's motion for summary disposition. Defendant is correct, but we conclude that reversal is not warranted because his statement of affirmative defenses was insufficient on its face.[12]

Before the trial court grants a motion for summary disposition under MCR 2.116(C)(10), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR

---

[10] MCL 559.208 was again amended in 2002, 2002 PA 283, but those changes are not relevant to the question before us.

[11] <https://www.merriam-webster.com/dictionary/together%20with> (accessed February 19, 2021).

[12] We review the trial court's decision to deny a party's request to amend its pleadings. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). The trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). MCR 2.118(A)(2) provides that the trial court shall freely give leave to amend a pleading "when justice so requires." The reasons that a trial court may deny a motion to amend include (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies in previous amendments, (4) undue prejudice to the opposing party, and (5) futility. *Weymers v Khera*, 454 Mich 639, 658; 563 NW2d 647 (1997). If the trial court denies a motion to amend, it should state its reason for doing so on the record. *Id*.

In this case, the trial court ruled that defendant's motion to amend his affirmative defenses was "moot" because it had granted summary disposition to plaintiff. The court's ruling was erroneous because it must consider the party's motion to amend his or her pleadings and state its reasons for denying that motion before it grants summary disposition under MCR 2.116(C)(10).

However, we may affirm the trial court when it reaches the right result for the wrong reason. *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). "An amendment is futile where, ignoring the substantive merits of the claim, it is legally insufficient on its face." *Hakari v Ski Brule, Inc*, 230 Mich App 352, 355; 584 NW2d 345 (1998) (quotation marks and citation omitted). MCR 2.111(F)(3)(a) provides that "a party must state the facts constituting . . . an affirmative defense . . . ." In this case, defendant's statement of affirmative defenses merely asserted the names of various defenses and stated that they applied in defendant's case. The proposed amendment was entirely devoid of factual statements to his asserted defenses.

Defendant's appellate brief provides little additional information. He makes arguments on three of his proposed defenses: the first-substantial breach rule, waiver, and unclean hands. As for the first-substantial breach rule,[13] after setting forth boilerplate law, defendant asserts that plaintiff and the developer "committed the first substantial breach of the covenants to which they were bound" and that they therefore cannot maintain a breach-of-covenant action against defendant. Defendant does not identify plaintiff's prior breach, however, or explain how it is substantial. And the developer is not a party to this lawsuit.

Defendant's waiver argument is premised on plaintiff waiting "almost ten years" before taking any action on his violation of the bylaws. This misstates the record. While plaintiff did not seek foreclosure or judgment of money damages until 2016, it began levying fines for the violation in 2005. Further, article XIV, § 2 of the bylaws provides that "[t]he failure of the Association or of any member to enforce any right, provision, covenant or condition which may be granted by the Condominium Documents *shall not constitute a waiver* of the right of the Association or of any such member to enforce such right, provision, covenant or condition in the future." (Emphasis added).

---

[13] "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citation omitted). This rule only applies when the initial breach is substantial. *Id*. at 650.

Finally, defendant asserts that the developer has unclean hands,[14] and therefore plaintiff may not enforce the covenants established by the master deed. See *Thiel v Goyings*, 504 Mich 484, 500; 939 NW2d 152 (2019) ("Courts do not enforce deed restrictions when the would-be enforcer has unclean hands."). But it is plaintiff, not the developer, that is seeking to enforce the bylaws. Accordingly, any defense based on the developer's conduct is futile.

In sum because defendant's proposed amendment was insufficient on its face, and he fails to show on appeal that any of the proposed defenses have merit, we affirm the denial of his motion to amend.

## III. CONCLUSION

Plaintiff has authority to levy fines for violation of its bylaws, and there is no question of fact that defendant violated the bylaws. But plaintiff may not seek foreclosure solely on the basis of unpaid fines. On remand, the trial court shall determine, as trier of fact, whether the fines levied against defendant were reasonable.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Douglas B. Shapiro

---

[14] Defendant asserts that the developer failed "to do certain things in the Condominium Documents, including allowing the owners to govern and developing and maintain common areas," despite promising to do so.