*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT HERNANDEZ, JR.,

        Plaintiff-Appellant,

v

DAVID GEORGE HIRES and ATLAS ROOFING
CORPORATION, also known as ATLAS
ROOFING COMPANY,

        Defendants-Appellees.

UNPUBLISHED
November 19, 2019

No. 345229
Berrien Circuit Court
LC No. 17-000262-NI

Before: MURRAY, C.J., and MARKEY and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(7). On the basis of a statement that plaintiff made in an earlier bankruptcy proceeding that he had no "[c]laims against third parties," the trial court determined that the doctrine of judicial estoppel barred plaintiff's civil action arising from a motor vehicle accident that occurred before the bankruptcy filing. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was operating a semi-tractor trailer on I-94 on January 19, 2016, when a nearby semi-tractor trailer being driven by defendant Hires jackknifed and veered in front of plaintiff's truck causing a collision.[1] Plaintiff claimed that he sustained serious injuries to his wrist, which required surgery, and to his back, which will likely result in future surgeries, including lumbar fusions. Plaintiff asserted that he was unable to work for approximately a year. Represented by counsel from Chicago, plaintiff filed a workers' compensation application in the state of Illinois

---

[1] Plaintiff alleged that defendant Atlas Roofing owned the truck driven by Hires and that Hires was operating the semi-tractor trailer as an employee of Atlas Roofing when the accident occurred.

in March 2016, and he subsequently collected workers' compensation benefits.[2]  In February 2017, a little over a year after the accident, plaintiff, along with his wife, filed a voluntary petition for personal bankruptcy protection under Chapter 13 of the United States Bankruptcy Code, 11 USC 1301 *et seq*. (adjustment of debts of an individual with regular income).[3]  Plaintiff resides in Indiana, and the bankruptcy petition was filed in the United States Bankruptcy Court for the Northern District of Indiana.  Plaintiff was represented by counsel from Indiana for purposes of the bankruptcy proceeding; the attorney was not plaintiff's workers' compensation lawyer.

In the executed bankruptcy schedule listing property assets held by plaintiff, he was asked whether he had the following asset:

> Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment[;]  *Examples*: Accidents, employment disputes, insurance claims, or rights to sue[.]

Plaintiff answered, "No."  In the bankruptcy schedule regarding income, plaintiff indicated that he was receiving monthly income in the form of workers' compensation.  Plaintiff signed the bankruptcy documents, declaring, under penalty of perjury, that his answers were true and correct.  Plaintiff's Chapter 13 bankruptcy plan was subsequently confirmed by the bankruptcy court on June 22, 2017.  "Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Harris v Viegelahn*, __ US __; 135 S Ct 1829, 1835; 191 L Ed 2d 783 (2015), citing 11 USC 1306(b), 1322, and 1327(b).  During the bankruptcy proceeding up to confirmation of the plan, plaintiff did not disclose to the trustee or bankruptcy court that he had a claim against defendants.

On September 29, 2017, plaintiff entered into a retainer agreement with current counsel for the express purpose of pursuing an automobile negligence claim.  The attorney had no affiliation or connection with the lawyers who handled the bankruptcy and workers' compensation matters.  On November 14, 2017, plaintiff filed the instant action against defendants alleging a variety of claims arising out of the accident in January 2016, including negligence, gross negligence, negligent entrustment, and owner liability.  Plaintiff maintained that he suffered a serious impairment of a body function.  On May 14, 2018, defendants filed a motion for summary disposition under MCR 2.116(C)(7), asserting that plaintiff's lawsuit was barred by the doctrine of judicial estoppel in light of his declaration to the bankruptcy court that he held no claims against any third parties.  On the same date, defendants filed a motion for leave to amend their affirmative defenses, seeking to add the defense of judicial estoppel.[4]  Defendants

---

[2] Plaintiff's employer at the time of the accident was Jack Cooper Transport Co, Inc., which had an Illinois business address.

[3] For ease of reference, we shall refer solely to plaintiff when discussing the bankruptcy proceeding even though plaintiff was joined by his wife in pursuing bankruptcy.

[4] Defendants had originally listed collateral estoppel and waiver estoppel in their affirmative defenses.

argued that they had deposed plaintiff about three weeks earlier and learned for the first time about his previous bankruptcy filing.

On June 12, 2018, plaintiff responded to the motion for summary disposition, arguing that he is a lay person and simply did not know during the bankruptcy proceeding that he had a potential lawsuit or claim against defendants stemming from the earlier accident. In a supporting affidavit executed by plaintiff, he averred in pertinent part as follows:

4. When I filed for bankruptcy, I indicated on Bankruptcy Official Form 106 A/B that I had no claims against third parties, nor had I made any monetary demands. This was the truth.

5. At the time I filed for bankruptcy, I was unaware that the accident I had been previously involved in would lead to the filing of a claim in that regard.

6. On June 22, 2017, the federal bankruptcy court confirmed my Chapter 13 plan, and my involvement in bankruptcy proceedings was completed.

7. At that time, I was still unaware of my potential involvement in a civil suit.

8. On or about August of 2017, my worker's compensation attorney brought to my attention that I had the basis upon which to file a third-party bodily injury claim, but informed me that he was unable to represent me on this claim, so he instead suggested I look at Feiger Law.

9. I did not seek to retain an attorney in this matter until September of 2017.

10. Throughout my involvement in the bankruptcy process, I had no intention of filing this civil claim. It was not until after the completion of the bankruptcy process that I became aware of my potential to file this claim.

In his response to the motion for summary disposition, plaintiff did not indicate that he had any intention or plan to return to the bankruptcy court in an effort to amend the schedule of assets relative to claims against third parties. A hearing on defendants' motions for summary disposition and leave to amend the affirmative defenses was conducted on June 25, 2018.[5] At the hearing, counsel for plaintiff did not ask the court for time to return to the bankruptcy court to amend the asset schedule or to add the omitted claim. And counsel did not mention or suggest that he or his client intended to take any such step. Speaking from the bench, the trial court

_____

[5] On the day of the hearing, plaintiff finally filed a response to the motion for leave to amend. He maintained that the motion should be denied because judicial estoppel did not apply for the reasons argued by plaintiff in responding to the motion for summary disposition.

granted the motion for leave to amend defendants' affirmative defenses and took the summary disposition motion under advisement.

On July 6, 2018, the trial court formally entered an order granting the motion for leave to amend the affirmative defenses, and the amended version of those defenses was filed the same day. On July 31, 2018, before the trial court issued its ruling on the summary disposition motion, plaintiff filed a supplemental response brief to the motion for summary disposition. In the brief, which was supported by attached documentation, plaintiff indicated that on July 16, 2018, his bankruptcy attorney had filed a petition with the bankruptcy court asking the court to allow plaintiff's litigation counsel to act "as special counsel for the purpose of claiming this suit as an asset under Plaintiff's Chapter 13 Bankruptcy Plan."[6] Therefore, according to plaintiff, defendants' motion for summary disposition was rendered moot. There is nothing in the record showing that the trial court had authorized or given permission to plaintiff to file the supplemental brief.

In a written opinion and order entered on August 7, 2018, the trial court granted defendants' motion for summary disposition. The trial court found, as a matter of law, that plaintiff assumed a contrary position in the bankruptcy proceeding as compared to the civil suit, that the bankruptcy court had adopted the contrary position, and that plaintiff's omission of the claim in the asset schedule was not the result of mistake or inadvertence. It does not appear that the trial court took into consideration plaintiff's supplemental response brief and the exhibits attached to the brief.[7] When discussing the facts, the court stated, "There is no record in the bankruptcy case that Plaintiff ever disclosed that he had a potential lawsuit against Defendants arising out of the . . . accident." Nowhere in the trial court's opinion did it reference the special counsel petition filed by plaintiff's bankruptcy attorney in the bankruptcy court. The court further determined, as a matter of law, that there was no mistake or inadvertence in regard to plaintiff's failure to include the claim in the schedule of assets where plaintiff had knowledge of the factual basis of the undisclosed claim; he had a motive to conceal, and where plaintiff acted in bad faith. On the issue of bad faith, the trial court ruled:

> Here, Plaintiff's bankruptcy attorney reviewed all claims on September 14, 2017. On September 29, 2017, Plaintiff retained [current counsel] to represent him in this civil lawsuit. The specifics of this claim were never disclosed to the Bankruptcy Court or his bankruptcy attorney until **after** Defendants filed this motion for summary disposition. It is disingenuous and begs credulity that Plaintiff would not have revealed to the court in his bankruptcy schedule, or to his bankruptcy attorney discussing his bankruptcy schedule with him; or for that matter, that it would not have occurred to his current attorneys, that this claim should have been included in his bankruptcy months before that he had been in an accident the previous year. Accordingly, this Court is convinced that the present

---

[6] Certificates of service reflected that a petition to employ special counsel and a notice of motion and opportunity to object were filed with the bankruptcy court and served on the trustee.

[7] We cannot even say with any confidence that the trial court was aware of the filing.

claim was never reported to nor considered by the bankruptcy court prior to or after discharge due to Plaintiff's clear bad faith to conceal the same.

On August 28, 2018, plaintiff filed his claim of appeal in this Court. Subsequently, plaintiff submitted an appellate brief, which had various exhibits attached, including a bankruptcy court document titled, "POST-CONFIRMATION AGREED IMMATERIAL MODIFICATION OF PLAN AND ORDER." This stipulated modification order (SMO) was signed by the bankruptcy court on August 31, 2018. Pursuant to the SMO, the debtors—plaintiff and his wife—and the trustee agreed to a modification of the bankruptcy plan that was deemed immaterial. The SMO provided:

> Debtors shall also contribute proceeds from the personal injury case equivalent to what creditors would have received had this been filed as a Chapter 7 case. [This also includes] . . . the worker's compensation case to the extent the claim is not exempt.

In this Court, defendants filed a motion to strike the SMO, arguing that it was not part of the lower court record. This Court denied the motion to strike without prejudice to the case call panel's determining whether to strike the exhibit or to take judicial notice of the exhibit pursuant to MRE 201. *Hernandez, Jr v Hires*, unpublished order of the Court of Appeals, entered on May 29, 2019 (Docket No. 345229). We shall address the matter below.

## II. ANALYSIS

### A. STANDARD OF REVIEW AND PRINCIPLES APPLICABLE TO MCR 2.116(C)(7)

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011). We also review de novo issues concerning the application of the doctrine of judicial estoppel. See *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012).

In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court recited the principles pertaining to a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

## B.  THE DOCTRINE OF JUDICIAL ESTOPPEL

Judicial estoppel is an equitable doctrine that generally precludes a party from prevailing in one phase of a case based on a particular argument and then placing reliance on a contradictory argument in an effort to prevail in a separate phase of the case.  *Spohn v Van Dyke Pub Schs*, 296 Mich App 470, 479; 822 NW2d 239 (2012).  The doctrine of judicial estoppel is used to preserve the integrity of the courts by barring a party from abusing the judicial process through cynical gamesmanship.  *Id.* at 479-480.  Judicial estoppel must be employed with caution to avoid impinging on the truth-seeking function of the courts, considering that the doctrine precludes a contradictory position or argument absent examination of its truth.  *Id.* at 480.  Pursuant to the "prior success model" of judicial estoppel, a party who has unequivocally and successfully advanced a position in an earlier proceeding is estopped from advancing in a later proceeding an inconsistent position.  *Id.*  In accordance with this model of the doctrine, the simple assertion of inconsistent positions is not adequate to invoke judicial estoppel; rather, it must be established that the court in the earlier proceeding accepted a party's position as true.  *Id.* And claims are required to be wholly inconsistent in order for the doctrine of judicial estoppel to be applicable.  *Id.*

To support application of judicial estoppel in the context of a bankruptcy proceeding followed by a civil lawsuit, it must be shown that: (1) the party against whom estoppel is being invoked assumed a position in the civil action that was contrary to the one asserted by that party under oath in the bankruptcy proceeding; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) advancement of the inconsistent positions did not result from mistake or inadvertence.  *Id.* at 480-481.  In determining whether an undisclosed claim by a party in the bankruptcy court resulted from mistake or inadvertence, courts must consider: (1) whether the party lacked knowledge regarding the factual basis of the undisclosed claim; (2) whether the party had a motive to conceal; and (3) whether the evidence reflected the absence of bad faith.  *Id.* at 481.  In resolving the issue of bad faith, a court should look in particular at a party's attempts to advise the bankruptcy court of any omitted claim.  *Id.*

## C.  THE DETAILS OF THE *SPOHN* CASE

The parties and the trial court focused almost exclusively on this Court's opinion in *Spohn*, which is the most relevant Michigan precedent on the application of judicial estoppel in the context of a bankruptcy case preceding a civil action.  Accordingly, we shall engage in an in-depth examination of *Spohn*.

In *Spohn*, the plaintiff, a school secretary, claimed that she had been the target of workplace sexual harassment that allegedly occurred during a period beginning in September 2008 and ending in early December 2008.  On November 27, 2008, the plaintiff, along with her husband, filed a Chapter 13 bankruptcy petition, and they submitted a proposed bankruptcy plan on December 9, 2008.  The plan contained no mention of a potential lawsuit against the defendants for workplace sexual harassment.  The plaintiff's last day of employment with the school was January 6, 2009, on which day the plaintiff's husband contacted an attorney about a potential lawsuit against the defendants.  At a meeting of creditors held on January 14, 2009, the plaintiff and her husband did not say anything about contemplating or pursuing civil rights

litigation relative to the plaintiff's former employment. On February 25, 2009, the bankruptcy court confirmed the Chapter 13 bankruptcy plan. In May 2009, the plaintiff's attorney wrote a letter to the defendants proposing a settlement regarding the assertion of sexual harassment, even though no lawsuit had yet been filed. In August 2009, the bankruptcy trustee moved to dismiss the Chapter 13 plan because the plaintiff and her husband had failed to make payments under the repayment plan. The plaintiff responded to and challenged the motion in early September 2009. On September 28, 2009, the plaintiff commenced a civil action against the defendants, alleging a violation of the Civil Rights Act (CRA), MCL 37.2101 *et seq*. On the same day, the plaintiff voluntarily withdrew her response to the trustee's motion to dismiss, and the bankruptcy court later dismissed the Chapter 13 petition on March 11, 2010. The plaintiff "acknowledged, under oath, that neither she nor her husband ever disclosed her potential cause of action for sexual harassment while the bankruptcy proceedings were pending." The trial court summarily dismissed the CRA suit on the basis of judicial estoppel, and this Court affirmed. *Spohn*, 296 Mich App at 472-474.

The *Spohn* panel first found that the plaintiff had assumed a position in the civil litigation that was contrary to the one that she had assumed under oath in the bankruptcy case. *Id.* at 481. The Court explained:

> In this case, it is undisputed that [the plaintiff] did not include her potential sexual harassment lawsuit on her bankruptcy petition and did not amend that petition to list the possible cause of action while the bankruptcy remained pending. This failure to disclose the potential lawsuit was contrary to the bankruptcy code, which requires a debtor to file a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs. It is routinely recognized that a potential cause of action constitutes an asset that must be included under 11 USC 521(a)(1)(B)(i). [*Spohn*, 296 Mich App at 481.]

The Court indicated that a bankruptcy debtor does not need to know all the facts or even the legal basis of a cause of action; rather, if, before confirmation, the debtor has information sufficient to suggest that he or she may have a possible cause of action, it must be disclosed, even if it is conditional, dependent, or contingent. *Id.* at 482. Additionally, in a bankruptcy proceeding, the duty of disclosure is a continuing duty and one that is essential to the bankruptcy process. *Id.* The *Spohn* panel stated that a trial court cannot permit a debtor who has obtained relief in a bankruptcy court by representing that no claims exist to then assert a claim for the debtor's own benefit in a subsequent civil suit. *Id.*

Next, the Court determined that the bankruptcy court had adopted the contradictory position proffered by the plaintiff, indicating that to establish "adoption," it merely must be shown that a bankruptcy court confirmed the debtor's plan. *Id.* at 483. This Court then held that the contrary positions advanced by the plaintiff were not the result of mistake or inadvertence. *Id.* In support of that holding, the *Spohn* panel first found that the plaintiff could not legitimately assert lack of knowledge of the factual basis of the undisclosed sexual harassment claim. *Id.* at 483-484. The Court noted that the plaintiff had relinquished her employment and spoken with an attorney concerning her sexual harassment claim at least one week before participating in a creditors' meeting and before the trustee had filed objections to the bankruptcy plan. *Id.* at 484.

In the context of further analyzing whether the bankruptcy omission by the plaintiff resulted from mistake or inadvertence, the Court examined the question whether the plaintiff had a motive for concealment. *Id.* at 485. The Court indicated that a presumption of a motive to conceal existed because it is in a Chapter 13 petitioner's interest to minimize his or her income and assets so as to secure direct payment instead of payment to the trustee or bankruptcy estate. *Id.* The *Spohn* panel further explained:

> A debtor loses all rights to his or her property upon filing for bankruptcy. As a result, the right to pursue causes of action formerly belonging to the debtor vests in the trustee for the benefit of the estate. The debtor has no standing to pursue such causes of action. [The plaintiff's] failure to initially disclose her possible lawsuit or to later amend her bankruptcy petition, despite opportunity, suggests a motive for concealment.

> [When] viewed within the context of a motive to conceal, the issue is not whether the plan would ultimately have been any different but, rather, whether there is sufficient evidence to demonstrate that [the plaintiff] was trying to retain assets that rightfully belonged to the estate and that should have been within the control of the trustee. [*Id.* at 485-486 (citations, ellipses, and quotation marks omitted).]

Finally, still in regard to the issue of mistake or inadvertence, the Court analyzed the question whether there was an absence of bad faith on the part of the plaintiff. *Id.* at 486. The Court observed:

> When considering whether the evidence indicates an absence of bad faith, courts will look, in particular, at the plaintiff's attempts to advise the bankruptcy court of the omitted claim. More specifically, courts primarily examine a plaintiff's efforts to correct the bankruptcy schedules and to make the bankruptcy court aware of any initially undisclosed claims. Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important. In this case, there is no dispute that [the plaintiff] did not inform the bankruptcy court of the potential sexual harassment lawsuit or make any attempts to amend her bankruptcy petition. This supports that [she] was acting in bad faith.

> And [the plaintiff's] contention that her filing of the sexual harassment lawsuit before formal dismissal of the bankruptcy petition evidences her lack of bad faith is unavailing. On August 26, 2009, the bankruptcy trustee filed its motion to dismiss [the] Chapter 13 plan. [The plaintiff] then filed this litigation on September 28, 2009. On that same day, [the plaintiff] voluntarily withdrew her response to the bankruptcy trustee's motion to dismiss. Although [the plaintiff's] bankruptcy petition was not formally dismissed until March 11, 2010, her failure to disclose the sexual harassment lawsuit after the trustee had submitted a motion to dismiss further suggests . . . bad faith.

Similarly, [the plaintiff's] assertion that her failure to disclose the potential lawsuit was merely mistake or inadvertence because she was unaware of her duty to disclose cannot be supported. If courts were to equate lack of legal training regarding a statutory duty to disclose or absence of affirmative efforts to conceal the claim with excusable mistake or inadvertence, it would undermine the familiar maxim that, even for *pro se* litigants, ignorance of the law is no excuse. . . . [A]lleged lack of knowledge of the duty to disclose is not a defense to failing to fulfill that duty. [*Id.* at 486-488 (citations, quotation marks, and alterations omitted).]

The *Spohn* panel also contemplated an additional factor cited by the plaintiff, which takes into consideration whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 488-489. The Court held that the plaintiff "received an unfair advantage over her creditors in the bankruptcy action by not disclosing the possible sexual harassment lawsuit." *Id.* at 490. In summation, this Court affirmed the summary dismissal of the plaintiff's lawsuit on the basis of judicial estoppel. *Id.*

## D. DISCUSSION

## 1. PRELIMINARY MATTERS

We initially address the issue of whether we should consider the SMO when it was not part of the lower court record. This Court's review is limited to the record developed in the trial court, and we generally cannot consider documents outside the record. MCR 7.210(A); *Wiand v Wiand*, 178 Mich App 137, 143; 443 NW2d 464 (1989). This Court does have the authority, on terms it deems just, to "permit . . . additions to the . . . record." MCR 7.216(A)(4). And under MRE 201, a court "may take judicial notice" of adjudicative facts "at any stage of [a] proceeding." See MRE 201(a), (c), and (e); see also *Johnson v Dep't of Natural Resources*, 310 Mich App 635, 649; 873 NW2d 842 (2015) (panel took judicial notice of a public record under MRE 201).[8] We conclude that it is unnecessary to decide whether the SMO should be struck, whether it should be considered under MRE 201, or whether we should permit enlargement of the record to add the SMO. Assuming for the sake of argument that the SMO may be considered as part of our analysis, we nonetheless hold that the SMO does not support or warrant reversal for the reasons discussed below.

As another preliminary matter, defendants argue that MCR 2.116(G)(1)(a)(iv) and (4) did not permit plaintiff to file his supplemental response brief following the hearing on the motion for summary disposition. Moreover, attachments to the brief included the request by plaintiff's bankruptcy lawyer to employ plaintiff's litigation attorney as "special counsel" to pursue the

---

[8] In general, "a paper filed in a [bankruptcy] case . . . and the dockets of a bankruptcy court are public records." 11 USC 107(a). Courts may take judicial notice under FRE 201 of bankruptcy documents because they are public records. *Lane v Vitek Real Estate Indus Group*, 713 F Supp 2d 1092, 1097 (ED Cal, 2010).

"personal injury claim which claim is an asset of this bankruptcy estate." Defendants contend that plaintiff's arguments premised on the exhibits attached to the improper supplemental response brief should be deemed "unpreserved" and should not be considered for purposes of appellate review.

MCR 2.116(G)(1)(a)(iv) does provide that aside from a brief supporting summary disposition, supporting a response to summary disposition, supporting a reply to a response, and supporting reconsideration of a summary disposition ruling, "no additional or supplemental briefs may be filed without leave of the court." The trial court did not grant plaintiff leave to file the supplemental response brief. In fact, plaintiff never sought leave. We note that under MCR 7.210(A)(1), "[i]n an appeal from a lower court, the record consists of the original papers filed in that court[,]" and plaintiff's supplemental response brief was never struck by the trial court. Regardless, even if plaintiff's arguments based on the documents appended to the brief are properly characterized as unpreserved, we choose to exercise our discretion to entertain the arguments. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Moreover, like the SMO, these bankruptcy documents ultimately do not save plaintiff's suit from the application of judicial estoppel for the reasons discussed below.

## 2. ADVANCING CONTRARY POSITIONS

We first hold that plaintiff advanced contrary positions upon comparison of the bankruptcy proceeding to the civil action. Plaintiff's lawsuit against defendants reflected his position that he had a claim for damages arising out of the collision between the two trucks, while plaintiff's position in the bankruptcy proceeding was that he had no claims against third parties, including any stemming from an accident. Considering that a potential cause of action constitutes an asset under bankruptcy law, plaintiff's failure to disclose the potential claim against defendants was contrary to the bankruptcy code which requires debtors to file a schedule of assets. See *Spohn*, 296 Mich App at 481.

Plaintiff contends that there was no inconsistency because the duty to make disclosure to the bankruptcy court is a continuing duty, and he eventually did, in fact, disclose to the bankruptcy court that he had a claim against third parties, as established by the documents filed by his bankruptcy attorney and the resulting SMO. Plaintiff argues that the circumstances in *Spohn* are easily distinguishable because the plaintiff in *Spohn* never returned to the bankruptcy court to notify the court of the pending sexual harassment lawsuit, whereas plaintiff here returned to the bankruptcy court and divulged the omitted claim. Plaintiff also maintains that although he did not make disclosure to the bankruptcy court before confirmation of his Chapter 13 plan, he made the disclosure during the repayment period of the bankruptcy proceeding, which sufficed.

We recognize that plaintiff, as opposed to the circumstances in *Spohn*, made a disclosure to the bankruptcy court that he had filed a lawsuit against defendants, and we also note that in *Spohn*, contrary to our situation, a consultation with an attorney about pursuing a civil action took place before the bankruptcy court confirmed the Chapter 13 repayment plan. But we conclude that plaintiff's disclosure of the lawsuit to the bankruptcy court was simply too late to be deemed effective for purposes of plaintiff's attempt to show consistency of position in the bankruptcy and trial courts.

-10-

As noted earlier, the doctrine of judicial estoppel is employed to prevent a party from abusing the judicial process through cynical gamesmanship. *Spohn*, 296 Mich App at 479-480. The *Spohn* panel favorably cited the opinion of the United States Court of Appeals for the Sixth Circuit in *White v Wyndham Vacation Ownership, Inc,* 617 F3d 472 (CA 6, 2010). *Spohn*, 296 Mich App at 479-480. The federal appellate court in *White* stated that it would "not consider favorably the fact that [the plaintiff, a Chapter 13 debtor,] updated her initial [bankruptcy] filings after the motion to dismiss was filed" because "[t]o do so would encourage gamesmanship, since [the plaintiff] only fixed her filings after the opposing party [in the civil suit] pointed out that those filings were inaccurate." *White*, 617 F3d at 481.

Were we to accept plaintiff's stance, we would effectively be endorsing a position that would allow a debtor in bankruptcy to omit disclosure of a claim against a third party and then file a civil action against that third party absent any negative consequences of the omission on the civil suit. The debtor plaintiff could remain silent and never return to the bankruptcy court to make disclosure if the defendant in the particular lawsuit failed to raise the doctrine of judicial estoppel, or, if the defendant sought summary dismissal on the basis of judicial estoppel, the debtor plaintiff could avoid dismissal by simply returning to the bankruptcy court and making the required disclosure. Under the latter circumstances, the debtor plaintiff would be able to successfully argue that the position he or she is advancing in the trial court *is now* consistent with the bankruptcy filings, ending any further analysis of the criteria regarding the invocation of judicial estoppel. Stated otherwise, the debtor plaintiff would have nothing to lose as far as survival of the civil action is concerned by attempting to deceive the bankruptcy court.

Plaintiff cites three unpublished opinions from this Court, arguing that they show that judicial estoppel is not properly invoked when a plaintiff actually informs the bankruptcy court of a prior omission regarding an existing claim, regardless of whether the disclosure was made during the course of the civil litigation. "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

The unpublished cases present procedural facts that are fairly comparable to those in the instant case. The gist of the reasoning in all of the three unpublished opinions for rejecting dismissal on the basis of judicial estoppel was that, unlike the plaintiff in *Spohn*, the plaintiffs or their bankruptcy attorneys had returned to the bankruptcy courts and disclosed the omitted claims to the courts, making the claims part of the respective bankruptcy estates. Although we need not distinguish our facts from those in the nonbinding unpublished opinions, we must note that none of those cases entailed a plaintiff who, like Mr. Hernandez, waited to notify the bankruptcy court of the omitted claim until *after* summary disposition briefs were filed, after a hearing on the summary disposition motion was held, and while the parties were awaiting a ruling on the motion from the trial court. In the unpublished cases, each plaintiff returned to and notified the bankruptcy court of the omitted claim at the time of or before the defendant's motion for summary disposition. Under the particular procedural and chronological facts in this case, we are not inclined to overlook plaintiff's extensive and unreasonable delay in returning to the bankruptcy court.

We understand that some of our discussion would support invoking judicial estoppel even had plaintiff raced to the bankruptcy court upon service of defendants' motion for summary disposition. We are troubled by a court allowing a party to wait until a motion for summary disposition is filed—if it is filed—before contacting the bankruptcy court about an omitted claim in relationship to the issue whether contradictory positions were advanced.[9] As explained earlier, we find the approach of simply allowing a party to cure the omission at summary disposition provides an incentive for a debtor in bankruptcy to omit acknowledgment of a claim against third parties in the hopes that judicial estoppel will not be invoked in the subsequent civil action, with an easy escape hatch if it is. That said, the delay in the case at bar went beyond even the time a summary disposition motion was filed, and plaintiff must face the consequences of his delay.

In sum, excluding consideration of the untimely disclosure made by plaintiff to the bankruptcy court, we hold that plaintiff advanced a position in the bankruptcy proceeding that was contrary to plaintiff's position in the civil action against defendants.

### 3. ADOPTION OF A CONTRARY POSITION BY THE BANKRUPTCY COURT

As we held above, plaintiff advanced a position in the bankruptcy court contrary to the position he now advances in civil court. Relying on plaintiff's representation that he did not have any claims against third parties, the bankruptcy court confirmed plaintiff's Chapter 13 repayment plan. This reliance and confirmation constitutes adoption by the bankruptcy court of plaintiff's contrary position. Plaintiff's subsequent disclosure to the bankruptcy court that he indeed had a claim and the entry of the SMO will not be considered on the issue of "adoption" because the disclosure leading to the SMO came unacceptably late.

### 4. MISTAKE OR INADVERTENCE

#### (i) LACKING KNOWLEDGE REGARDING THE FACTUAL BASIS OF THE UNDISCLOSED CLAIM

There can be no reasonable dispute that plaintiff had knowledge of the factual basis of the undisclosed claim. Plaintiff knew that he was in an accident in which his semi-tractor trailer was struck in a collision with another semi-tractor trailer that had lost control on the highway, and he was certainly aware that he suffered injuries as a result of the accident. Accordingly, plaintiff fails to establish mistake or inadvertence, as a matter of law, on the ground that he lacked knowledge of the factual basis of the undisclosed claim.

#### (ii) MOTIVE FOR CONCEALMENT

As supported by the discussion in *Spohn*, a presumption of a motive to conceal arose because it was in plaintiff's interest to minimize his assets in order to potentially secure direct

---

[9] Bad faith is a separate consideration, but bad faith is a factor that is never reached if indeed a party advanced consistent positions.

payment from defendants in the litigation instead of the trustee's pursuing the claim against the defendants and possibly obtaining a recovery for the benefit of the bankruptcy estate. See *Spohn*, 296 Mich App at 485-486. As the issue was not mentioned in plaintiff's affidavit or any other documentary evidence submitted by plaintiff, he failed to overcome the presumption that he had a motive to conceal as a matter of law.

### (iii) BAD FAITH

If our examination of the issue regarding bad faith were limited to plaintiff's conduct that occurred before the bankruptcy court confirmed the Chapter 13 plan in June 2017, it perhaps would be a close call given plaintiff's affidavit as to whether a factual dispute exists with respect to the presence or absence of bad faith. As to the period leading up to confirmation, plaintiff averred that he had not made any claims against third parties related to the accident, that he had not made any monetary demands, that he had no intent to pursue any claim, that he did not know that the accident would lead to the filing of a claim, and that he was unaware of his potential to file a claim or become involved in a civil action. We do note that none of the averments in plaintiff's affidavit stated in a plain, straightforward manner that he did not know that he had a claim arising out of the accident, which was the subject of the question posed to him in the bankruptcy schedule of assets. Moreover, the bankruptcy schedule made clear that an "accident" could form the basis of a claim, regardless of whether a lawsuit had been filed or whether demand for payment had been made. Whether a debtor contemplated actually filing a civil action or making a demand for payment is not the relevant inquiry. On the other hand, it does not strain credulity that a party injured in a motor vehicle accident while driving in the course of employment who then receives workers' compensation benefits based on the accident might believe that a separate personal injury claim is not available.[10] Nevertheless, it is plaintiff's post-confirmation actions, or lack thereof, upon learning of a potential claim against defendants and then learning that judicial estoppel was being argued as a defense that are ultimately his undoing.[11]

Again, plaintiff averred in his affidavit that in August 2017 his workers' compensation attorney informed him that plaintiff "had the basis upon which to file a third-party bodily injury claim." Plaintiff, however, did not make any effort at that point in time to return to the bankruptcy court to disclose that he had a claim against third parties. On September 29, 2017, plaintiff executed a retainer agreement with his current attorney to pursue a negligence claim

---

[10] We note that the *Spohn* panel stated that ignorance of the law is no excuse for failing to make a disclosure, *Spohn*, 296 Mich App at 488, which, in our view, seems to be somewhat inconsistent with evaluating whether a party acted in bad faith.

[11] In *Spohn*, the bankruptcy court confirmed her Chapter 13 repayment plan in February 2009; yet the Court, in analyzing the question of bad faith, found that the continuing duty of disclosure existed not only before confirmation but also afterward during the course of the repayment plan. *Spohn*, 296 Mich App at 486-488. Here, plaintiff himself effectively argues that the duty to disclose extends beyond confirmation of a Chapter 13 plan, where he asserts that he complied with the duty by notifying the bankruptcy court of the civil action in July 2018.

arising from the accident. Plaintiff, once again, failed to return to the bankruptcy court to disclose that he had a claim against third parties. Even upon actually filing the lawsuit in November 2017, plaintiff still did not notify the bankruptcy court that his assertion in the bankruptcy schedule that he had no claims against third parties was no longer accurate. In May 2018, after defendants moved for leave to amend their affirmative defenses and for summary disposition, raising the defense of judicial estoppel in both motions, plaintiff, remarkably, did not return to the bankruptcy court to disclose the omitted claim and amend the schedule of assets. In June 2018, by the time the trial court conducted a hearing on the two motions, plaintiff had still not notified the bankruptcy court of the omitted claim, nor did he even suggest to the court at the hearing that he intended or wished to do so. It was only after the hearing and while the parties were awaiting the trial court's ruling that plaintiff finally apprised the bankruptcy court.

Plaintiff's affidavit provided no excuse, let alone a justifiable one, for failing to notify the bankruptcy court in late summer, early fall 2017, which was after confirmation but during the course of the repayment plan, that he had a claim against third parties, even though he acknowledged awareness of a claim as early as August 2017.[12] And no excuse has been presented for not returning to the bankruptcy court after the doctrine of judicial estoppel was first raised in May 2018 during the civil litigation. Plaintiff accurately contends that this Court in *Spohn* stated that in examining the question of bad faith, reviewing courts should particularly look at attempts by a party to advise the bankruptcy court of an omitted claim. *Spohn*, 296 Mich App at 481. In this case, although plaintiff eventually informed the bankruptcy court of the omitted claim, the notification was not timely, and there was no reason, acceptable or otherwise, for the delay. Accordingly, we hold, as a matter of law, that there was no showing of an absence of bad faith.

In sum, plaintiff failed to create a genuine issue of fact regarding whether mistake or inadvertence explained his failure to timely disclose to the bankruptcy court that he had a claim against third parties.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jane M. Beckering

---

[12] Plaintiff does not argue, nor did he aver in his affidavit, that he was unaware that he had a duty to disclose the omitted claim when he first learned that he had a cause of action, assuming ignorance of the law could even be argued. See *Spohn*, 296 Mich App at 488. Also, plaintiff did not assert in his affidavit that he simply forgot about the bankruptcy declaration upon and after learning that he had a civil claim against defendants.