*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CK,

        Petitioner-Appellee,

v

AM,

        Respondent-Appellant.

UNPUBLISHED
June 22, 2023

No. 362000
Oakland Circuit Court
LC No. 2022-512051-PP

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order denying respondent's motion to terminate an ex parte domestic relationship personal protection order ("PPO") obtained by petitioner. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner and respondent were neighbors in Royal Oak, Michigan. Petitioner and respondent first went on a date in August 2018, and the nature of the relationship between the parties following the date is disputed. Petitioner advanced that he maintained a sexual relationship with respondent following their first date, and "hooked up a few times," but things came to a halt after respondent filed a complaint with the Royal Oak police department, which accused petitioner of sexual assault. Respondent purported that following her date with petitioner, he and respondent engaged in sexual intercourse, which respondent was pressured into because of her fear concerning petitioner's violent nature. Respondent maintained that she did not go on another date with petitioner, and only maintained a "friendly" relationship with petitioner before petitioner began stalking her.

Between November 2021 and January 2022, respondent filed two ex parte domestic relationship PPO petitions against petitioner in the Oakland Circuit Court, which were subsequently denied, and one ex parte domestic relationship PPO petition against petitioner in the Macomb Circuit Court, which was initially granted without a hearing, but subsequently terminated. The fundamental allegations in each of the petitions was that (1) petitioner and respondent were previously in a dating relationship, (2) petitioner sexually assaulted respondent following their

-1-

date in August 2018, and (3) after respondent allegedly informed petitioner that she did not want to have sex with him, petitioner subsequently became angry with respondent, and proceeded to stalk respondent approximately four years later as an act of revenge. In the verified statement accompanying the petition filed in the Macomb Circuit Court, respondent specifically asserted that petitioner was her ex-boyfriend, the parties dated for a few months in the summer of 2018, and their relationship ended in September 2018. Moreover, between October 2021 and February 2022, respondent filed several police reports detailing suspicions of stalking and surveillance, which primarily listed petitioner as the suspect in the following Michigan cities: Royal Oak, Saginaw, Centerline, and Bloomfield Hills.

In March 2022, petitioner filed a petition for an ex parte domestic relationship PPO in the Oakland Circuit Court contending that (1) petitioner and respondent had a dating relationship, (2) respondent repeatedly filed numerous false police reports against petitioner, (3) respondent previously filed a domestic relationship PPO petition in the Oakland Circuit Court which was denied, (4) respondent subsequently filed a domestic relationship PPO in Macomb Circuit Court, which was terminated on March 7, 2022, and (5) respondent contacted petitioner several times via text messages. The trial court granted the ex parte domestic relationship PPO against respondent, which prohibited respondent from "[p]osting a message through the use of any medium of communication, including the internet or a computer or any electronic medium, pursuant to MCL 750.411s." The issued PPO further barred respondent from (1) entering onto property where petitioner lives, (2) following or approaching petitioner in a public place or on private property, (3) delivering an object to petitioner's property, (4) threatening to kill or physically injure petitioner, and (5) intentionally causing petitioner mental distress or exerting control over petitioner by harming, removing, or obtaining an animal in which petitioner has an ownership interest.

Respondent subsequently moved to terminate the PPO, in which she broadly denied petitioner's allegations and argued that petitioner began stalking respondent in the summer of 2021. In the motion, respondent detailed several instances of surveillance and stalking, purportedly by petitioner, which she attempted to support with the numerous police complaints filed by her in various Michigan cities. Following a hearing on respondent's motion to terminate the PPO, the trial court concluded that petitioner demonstrated his continued need for the PPO against respondent and reiterated that respondent could not contact petitioner through any medium or form of communication.

Respondent moved for reconsideration, arguing that she failed to articulate that (1) the parties were not involved in a dating relationship as defined under MCL 600.2950, and (2) a PPO could not be issued based upon a claim that false police reports had been made because filing a police report based on suspicions of being stalked served a legitimate purpose under MCL 750.411h(l)(c). Respondent advanced that petitioner falsely alleged that "[r]espondent was making false police reports about him to various police agencies and used the fact that [r]espondent was having him investigated for stalking to 'flip the script' so that she became the stalker when she was really asking the police for help."

The trial court denied respondent's motion for reconsideration. The trial court stated that, despite respondent's alleged oral argument deficiencies at the prior motion hearing, it did not find either party unable to appropriately convey their arguments or unable to "develop the record

-2-

precisely to the degree they intended." The trial court also recognized that it had the discretion on a motion for reconsideration to decline to consider new legal theories which could have been presented when the motion was initially decided. The trial court expressed that respondent's instant motion did not provide any reason why respondent was otherwise prohibited from advancing her arguments at the original hearing, and the trial court declined to consider the new assertions upon reconsideration. The trial court concluded that it did not palpably err in denying respondent's motion to terminate the PPO and denied respondent's motion for reconsideration, and noted the PPO remained in effect until March 10, 2023.[1]

## II. STANDARDS OF REVIEW

As both issues on appeal were raised for the first time in respondent's motion for reconsideration, neither issue is properly preserved for appellate review. *Dep't of Environmental Quality v Morley*, 314 Mich App 306, 316; 885 NW2d 892 (2015). "This Court reviews unpreserved claims of error in civil cases for plain error affecting substantial rights." *Ayotte v Dept of Health & Human Servs*, 337 Mich App 29, 40; 972 NW2d 282 (2021). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Demski v Petlick*, 309 Mich App 404, 427; 873 NW2d 596 (2015) (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## III. ANALYSIS

### A. EXISTENCE OF A DATING RELATIONSHIP

Respondent argues that the trial court erred when it denied respondent's motion to terminate the PPO under MCL 600.2950 because the great weight of the evidence did not establish the existence of a "dating relationship" between the parties. Because respondent is judicially estopped from advancing this argument, we disagree.

MCL 600.2950 governs PPOs involving current or former spouses, individuals in dating relationships, and housemates, while MCL 600.2950a, the nondomestic PPO statute, addresses stalking behavior or conduct that is not limited to certain existing relationships. *TT v KL*, 334 Mich App 413, 439; 965 NW2d 101 (2020). MCL 600.2950(1) states, in part:

---

[1] While the PPO at issue has expired during the pendency of this appeal, the appeal is not necessarily moot because "identifying an improperly issued PPO as rescinded is a live controversy and thus not moot." *TM v MZ*, 501 Mich 312, 319; 916 NW2d 473 (2018). This is because "[a] judgment here *can* have a 'practical legal effect' under [*Anway v Grand Rapids R Co*, 211 Mich 592; 179 NW 350 (1920),] because if the Court concludes that the trial court should never have issued the PPO, respondent would be entitled to have LEIN reflect that fact." *Id*. "Thus, an appeal challenging a PPO, with an eye toward determining whether a PPO should be updated in LEIN as rescinded, need not fall within an exception to the mootness doctrine to warrant appellate review; instead, such a dispute is simply not moot." *Id*. at 319-320.

[B]y commencing an independent action to obtain relief under this section, . . . an individual may petition the family division of circuit court to enter a personal protection order to restrain or enjoin a spouse, a former spouse, an individual with whom he or she has had a child in common, *an individual with whom he or she has or has had a dating relationship*, or an individual residing or having resided in the same household as the petitioner . . . . [Emphasis added.]

MCL 600.2950(30)(a) defines "dating relationship" as "frequent, intimate associations primarily characterized by the expectation of affectional involvement." The statute further states that a dating relationship does not include "a casual relationship or an ordinary fraternization between 2 individuals in a business or social context." MCL 600.2950(30)(a).

While respondent maintains that a dating relationship did not exist between petitioner and respondent because the frequency of contact and the intent of the parties did not demonstrate a mutual expectation of ongoing, affectional involvement, respondent is judicially estopped from advancing this argument when considering her previous filings in the Macomb Circuit Court. Judicial estoppel is an equitable doctrine that generally bars a party from prevailing in one phase of a case on an argument and subsequently relying on a contradictory argument to prevail in another phase. *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012). Michigan follows the "prior success model" of judicial estoppel, which states that "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Id.* (quotation marks and citation omitted). "[T]he mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true." *Id.* (quotation marks and citation omitted). The prior success model, however, does not require that the estopped party must have prevailed on the merits. *Id.*

In *Spohn*, this Court explained:

The doctrine of judicial estoppel is driven by the important motive of promoting truthfulness and fair dealing in court proceedings. Judicial estoppel differs from such other forms of estoppel as promissory estoppel and equitable estoppel in that judicial estoppel focuses on the relationship between the litigant and the judicial system as a whole, rather than solely on the relationship between the parties. Of utmost importance in determining whether to apply the doctrine of judicial estoppel is whether the party seeking to assert an inconsistent position would derive an unfair advantage if not estopped. [*Spohn*, 296 Mich App at 489 (quotation marks and citation omitted).]

Consequently, the ultimate purpose of judicial estoppel "is to protect the judicial process, not the parties." *Id.* The doctrine was further developed to prevent parties from playing "fast and loose" with the legal system. *Wells Fargo Bank, NA v Null*, 304 Mich App 508, 537; 847 NW2d 657 (2014). Courts apply judicial estoppel to prevent a party "from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposing [position] to suit an exigency of the moment." *Opland v Kiesgan*, 234 Mich App 352, 364; 594 NW2d 505 (1999) (quotation marks and citations omitted). Moreover, the doctrine "is intended

to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Id*. (quotation marks and citation omitted).

Respondent successfully and unequivocally asserted the existence of a previous dating relationship between respondent and petitioner in the ex parte domestic relationship PPO petition filed in the Macomb Circuit Court. In the verified statement accompanying that petition, respondent asserted that petitioner was her ex-boyfriend, the parties dated for a few months in the summer of 2018, and their relationship ended in September 2018. The verified statement contained the following statement directly above the signature line:

> VERIFCIATION [SIC] UNDER MCR 2.114(2)(8): I DECLARE THE STATEMENTS ABOVE ARE TRUE TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEF. An individual who knowingly and intentionally makes a false statement to the court in support of her or his petition for a personal protection order is subject to the contempt powers of the court. MCLA 600.2950(24); 600.2950a(21).

The Macomb Circuit Court subsequently granted the petition without a hearing and issued the PPO against petitioner. Moreover, respondent asserted that a dating relationship existed between the parties in previously filed police reports, in addition to the prior domestic relationship PPO petitions filed in the Oakland Circuit Court. These circumstances are similar to *Spohn*, where the defendant sought to apply judicial estoppel on the basis of statements the plaintiff had made in the plaintiff's previous bankruptcy proceeding. *Spohn*, 296 Mich App at 482-483. The plaintiff failed to disclose the existence of a workplace sexual harassment claim against the defendant to the bankruptcy court, and after the dismissal of the bankruptcy case, the plaintiff pursued the sexual harassment lawsuit against the defendant. *Id*. This Court concluded that judicial estoppel barred the plaintiff's claim because of her prior, inconsistent assertion to the bankruptcy court—while under oath—that she had no potential causes of action. *Id*. In this case, respondent asserted in the verified statement attached to the domestic relationship petition in the Macomb Circuit Court that she and petitioner were previously in a dating relationship and the Macomb Circuit Court issued a PPO in response. While the PPO was later terminated, the Macomb Circuit Court necessarily relied on the existence of a dating relationship to issue the PPO because a domestic relationship PPO is only applicable in cases involving "a spouse, a former spouse, an individual with whom he or she has had a child in common, an individual with whom he or she has or has had a dating relationship, or an individual residing or having resided in the same household as the petitioner . . . ." MCL 600.2950(1). None of the other enumerated relationships, other than a "dating relationship," are applicable.

Allowing respondent to proceed with the wholly inconsistent assertion that a dating relationship did not exist between herself and petitioner presents a danger of inconsistent rulings, because a requisite of filing a domestic relationship PPO petition, as mentioned earlier, is the existence of a marriage, cohabitation, coparenting, or a previous dating relationship between the parties. See *Wolverine Power Coop v Dep't of Environmental Quality*, 285 Mich App 548, 566; 777 NW2d 1 (2009) (stating "[j]udicial estoppel is an equitable doctrine that the Court may raise to preclude inconsistent judicial rulings"). Moreover, respondent would potentially prevail twice, on opposite theories, because the Macomb Circuit Court first issued the domestic relationship PPO under the premise a dating relationship existed between the two parties, and respondent would

have then succeeded in the instant case if the trial court terminated the PPO finding that there was no dating relationship. While the two petitions in the Oakland Circuit Court would not be considered "successful" under the judicial estoppel doctrine, those petitions, in addition to the filed police reports, indicate that respondent was attempting to create a narrative concerning the relationship between herself and petitioner. Therefore, under the doctrine of judicial estoppel, respondent is barred from presenting the inconsistent argument that no dating relationship existed between the parties on appeal.

## B. POLICE REPORTS

Respondent also contends that the trial court erred when it ordered respondent to refrain from filing police reports against petitioner because the court's power to enjoin a person from engaging in conduct that constitutes stalking under MCL 750.411h and MCL 750.411i did not extend to constitutionally protected activities that served a legitimate purpose other than harassment of a protected person. We disagree.

"[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). There is no language in the PPO issued against respondent that prohibits her from filing police reports concerning petitioner, nor is it noted in the trial court's order denying respondent's motion for reconsideration. The PPO generally prohibited respondent from engaging in conduct which constituted stalking as defined under MCL 750.411h and MCL 750.411i, such as (1) entering onto property where petitioner lives, (2) following or approaching petitioner in a public place or on private property, (3) delivering an object to petitioner's property, (4) threatening to kill or physically injure petitioner, and (5) intentionally causing petitioner mental distress or exerting control over petitioner by harming, removing, or obtaining an animal in which petitioner has an ownership interest. None of the items in the PPO preclude respondent from filing police reports, rather, the PPO is geared toward ceasing communication and contact with petitioner.[2]

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

---

[2] Respondent also contends that the trial court abused its discretion when it refused to consider her new arguments raised in her motion for reconsideration. However, as we have repeatedly stated, a trial court does not abuse its discretion by "denying a motion resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order." *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 630; 750 NW2d 228 (2008).